## STATE *vs.* GERARD TOOLE.

Arson is a crime against the security of a dwelling-house, as such, and not against the building as property; and it is therefore proper, in an indictment for the crime, to describe the house burned as the house of the person dwelling in it, without reference to the question of ownership.

A house consisting of two distinct tenements, occupied in severalty, should not be described in such an indictment as the dwelling-house of both occupants, as such a description implies a joint occupancy.

Where there is no interior communication between different parts of the same building, which are separately occupied, the parts are to be regarded as separate buildings.

And it seems that if there is such interior communication, but it is not in actual use, and the occupancy of the parts is strictly in severalty, the parts would still be regarded as separate buildings.

Upon a motion for a new trial, the instructions of the court and the facts detailed in the motion will be considered solely in their relation to questions made on the trial below.

State *v.* Toole.

INDICTMENT for arson. The house set on fire was described in the indictment as "a certain dwelling-house of one John W. Slater." On the trial it appeared that the fire was set in the basement of the southerly part of a building which was originally constructed for one dwelling-house, and which was situated on the westerly side of Church street, in the city of New Haven, and that it was forty feet in width, fronting on the street—that no part of the building was burned except the floor of the basement room in which the fire was set—that the land on which the building stood was owned in fee by the society of Trinity Church—that Sally Slater, the wife of John W. Slater, named in the indictment, was the legal owner of twenty-two feet, from front to rear, of the southerly part of the building, including the basement-room, and held a lease from the society of the land on which that part of the building stood—that John W. Slater was entitled to the use of that part of the land and building, as her husband—that the residue of the building, eighteen feet wide from front to rear, was owned by Allen A. Smith, who also held a lease from the society of the land covered by it—that there was no joint occupancy of any part of the building by the Slaters and Smith, or by any persons under them, but that they occupied their respective portions in severalty—that Slater and his wife resided in their part of the building—that the dividing line between the owners ran along the north side of the main entrance hall and thence to the rear, but there was nothing else to indicate where the dividing line was located— and that that part of the building belonging to the Slaters, was occupied in the following manner, viz: the basement room (where the fire was set,) by the prisoner, as a saloon; the first story by one Duntze, as a gunsmith's shop; and the second story, in part by Slater and wife, as their dwelling-house, and in part by lodgers hiring their accommodations of them. Thereupon the prisoner's counsel contended that there could be no conviction of the prisoner on the indictment, because the building charged to have been burnt was described as the dwelling-house of John W. Slater, while the legal title to the property was in his wife, Sally Slater; and because

John W. Slater had no interest in or occupancy of the northerly part of the building, of which Smith was the sole owner, and which he occupied in severalty, while the whole building was described as the house of Slater; and they prayed the court so to charge the jury. The court charged the jury that upon the facts proved and admitted in relation to the ownership and occupancy of the building set on fire, it was correctly described in the indictment as the dwelling-house of John W. Slater, and that the prisoner was not entitled to an acquittal for either of the reasons alleged.

The jury having found the prisoner guilty, he moved for a new trial.

*C. R. Ingersoll* and *Doolittle*, in support of the motion.

*Foster*, state attorney, and *F. H. Peck*, contra.

STORRS, C. J.   Arson and burglary are offenses against the security of the dwelling-house, and not against such buildings as property.   The legal owner of a house, who sets fire to it while it is in the occupation of another person, it has been said, may be therein guilty of the first mentioned crime; while its occupant by a like act would not become so chargeable, because arson is the malicious firing of the habitation of *another*.   From the necessity of the case, therefore, the proper mode of describing the subject of the burning is to call it the house of the person who dwells in it; although proof of ownership at times affects the question of occupancy.   It is even held that, if possession of it be wrongfully obtained, it must be set forth as the house of the wrongful occupier. *Rex* v. *Wallis*, 1 Mood. C. C. 344.   It was settled more than half a century ago, in New York, that on trials for arson the court can not inquire into the tenure or interest of the occupant in the building inhabited by him.   *People* v. *Van Blarcum*, 2 Johns., 105.   In that case the structure burned was a jail, a part of which was tenanted, under a licence from the sheriff, by the jailer and his family.   It was decided to be well described as that officer's dwelling-house.   We are of opinion that the court below, in view of the fact that the premises set

State *v.* Toole.

on fire were occupied by Mr. Slater and his family, properly refused to entertain the question raised as to the "legal title" of Mrs. Slater in them. If occupation alone is to be considered, it will not be denied that the law regards the husband as the occupant. *Rex* v. *French,* Russ. & Ry., 491. *Rex* v. *Wilford,* id., 517.

The record shows that an objection was taken to the description of the premises, founded on the separate ownership of different portions of the building, in one of which portions the crime was committed. It has been argued before us, that the house should have been described as the dwelling of the two persons who owned and occupied the different parts of it in severalty. In this aspect the objection is without plausibility. An allegation that the building was the dwelling-house of two, would be in law an averment that it was occupied by the two in common; for it is settled that where there is a joint occupancy, it is in law the possession of all who so occupy, and must be so described. *Maynard's case,* 2 East P. C., 501. To call a house, consisting of two distinct tenements, owned and occupied severally, the dwelling-house of both, would be an obvious mis-description. In no case of a separate occupation of different portions of the same building do the authorities sanction the idea that it is to be described as the dwelling-house of both. On the other hand, in numerous instances, as in cases of lodgers and tenants, the occupancy of a distinct portion by such persons is treated as incidental or subsidiary to the possession of the general owner and occupant, so that it is necessary to describe the lodger's or tenant's part as the dwelling-house of the owner himself, of which the law holds it to be *parcel.* We conclude that the property burned should not have been described as the dwelling of both Slater and Smith.

The court perceive, however, that the record gives rise to the inquiry, whether a building, tenanted according to the details of the motion, could properly be described as the dwelling-house of Slater, rather than the dwelling-house of Smith. If the description had been reversed, an equally serious doubt would arise whether it could properly be described as the

dwelling-house of Smith rather than that of Slater. From the facts set out, it is impossible to say that the occupation of either was in any sense incidental or subordinate to that of the other. This dilemma would seem of itself to make it necessary to regard the two tenements, although under one roof, and originally constructed as one tenement, as two different dwelling-houses, as clearly as if they were different houses in a compact block. It is difficult to see how the mere accident of structure, if it should create an interior communication between two tenements, owned and occupied strictly in severalty, with no *practical* communication actually in use between them, could render them, by legal intendment, one habitation, and the habitation of one only of the occupants, for purposes of description either in an instrument or civil process, or in a criminal information. Omitting to decide such a question, we find that the motion does not in fact set forth that there was any interior communication between the tenements of Slater and Smith. On the contrary, it denies that any part of the building or land, (language which, for aught that we can see, embraces the main entrance-way,) was owned or occupied jointly by the two parties. The division line of the property was such as to leave this hall entirely on the side of one only of the proprietors. It is not averred that either door or window of the other owner was in practical communication with this entrance-way. Now it is well settled that if there is no interior communication between different parts of the same building, separately occupied, the parts are to be regarded as separate buildings. 1 Bish. Cr. Law, § 167. Even when such separate possession is that of general owner and of his lessee, the part occupied by the latter, if broken into or set fire to, instead of being treated as parcel of the owner's dwelling, is to be described as the dwelling-house of the tenant. 1 Hale, 558. 2 East P. C., 507. In no aspect of the case, therefore, was the defendant's request to the court below well founded.

The defendant's counsel have also sought to give such a construction to the judge's charge as to raise still another question, not made at the trial below. It is now said that,

from the narrative on the record, it appears that the particular part of the building where the fire was set was the prisoner's own shop, and not parcel of any one's dwelling.   Whatever the truth may have been, it is a settled rule that in construing the charges of courts, and the recitals of facts to which their instructions relate, both will be interpreted with strict reference to the points made on the trial.   We therefore do not undertake to review a point thus originated.   It gives us more confidence that the point was entirely a new one in this court, to find that the leading and vital assertion upon which the defendant's counsel base this part of their argument,—that the apartment of the accused had no internal communication with the dwelling-house of the Slaters,—is not sustained, expressly or impliedly, by the record.   On the other hand, his saloon is said to be a part of their portion of the building; which portion, it is generally averred in another place, was owned and *occupied* by Slater and his wife.

We do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.