# Leizer Meister and another v. The People.

*Prosecuting attorneys : Criminal prosecutions : Counsel retained by private citizens : Interested parties.* Our statutes (*Comp. L. 1871*, §§ 529, 530, 534), requiring the prosecuting attorney to prosecute all criminal cases in his county, and debarring him from receiving any fee or reward from any private person for any services within his official business, and from being retained, except for the public, in any civil action depending on the same state of facts on which a criminal prosecution shall depend, are held to preclude counsel in the employ of private persons from taking part with the prosecuting attorney in criminal prosecutions. The policy of this law is to prevent prosecution by interested parties, and counsel permitted to act with the prosecuting attorney are subject to the same restrictions in this regard which are imposed upon him.

*Burning property to defraud insurers : Criminal prosecution : Counsel employed by insurers : Prosecuting attorney.* Counsel employed by insurers of the property destroyed are precluded by this statute from taking an active part with the prosecuting attorney at his request, in a criminal prosecution of the insured, upon a charge of burning the property with intent to defraud such insurers.

*Burning property to defraud insurers : Valid insurance : Evidence.* To establish the offense of burning insured property with intent to defraud the insurer, as defined by the statute (*Comp. L. 1871*, § 7560), it is essential to prove a valid and subsisting insurance, as it is only the burning of property actually insured that the statute punishes.

*Evidence : Insurance : Agency : Acts of recognition.* Evidence that the policies of insurance were not completed for delivery at the home office, but were sent with printed signatures to one who signed and delivered them as agent ; that the authority of such agent was written ; that the blank policies were received from a Chicago firm purporting to be general agents ; that no losses had been paid by any of the companies at that place ; that the agent who signed and delivered the policies made remittances, deducting commissions, and not showing what was received on particular policies ; that reports, with lists and particulars of policies, were sent monthly to the secretary, the receipt of which were acknowledged,—in the absence of any proof of the written authority of such agent, or of the authority of such general agents, or of the incorporation or existence of the companies, or of the contents of any of the reports, or that the person acknowledging their receipt was secretary,—fails entirely to prove a valid insurance.

*Burning property to defraud insurers : Previous conspiracy : Evidence : Purpose.* Evidence of a previous conspiracy between the defendants, within a short time of the burning in question, to procure the burning of the same property, is held admissible as tending to show a purpose to burn the property, which is an important element of the crime.

*Evidence : Corroboration : Statements out of court : Identity.* It is not competent, for the purpose of corroborating the testimony of infamous witnesses, to admit evidence of their statements out of court, which are not identical with their testimony, and therefore do not corroborate it.

*Evidence : Knowledge of a fact : Inferences : Motives : Burning insured property : Husband and wife.* Knowledge of a fact is open to proof by circumstances, like any other matter ; and where a wife is shown to have intentionally burned a building where the family dwelt, consisting of a store and dwelling united, and thereby destroyed her husband's property, if no enmity towards her hus-

MEISTER *v.* PEOPLE.

band appeared, the inference of an intent to conceal some fraud, or to injure some one else, would be a natural and legitimate one; and if the property of the husband thus destroyed were shown to be insured, the wife's knowledge of the existence of such insurance might fairly be inferred, in the absence of any thing pointing to any other motive, in connection with the inference of the motive to defraud the insurers.

*Principals: Accessories: Procurement: Conspiracy.* At common law no one could be a principal in the commission of a crime, without actual presence near enough to aid, if needed, in furthering the crime; and those who had procured a crime to be committed by others, but were themselves in another city when the crime was actually committed, would be accessories before the fact; and their offense is in the nature of a previous conspiracy to procure the commission of the principal offense.

*Principals and accessories: Indictments.* Except by virtue of some statutory provision one who is indicted as principal cannot be convicted as accessory, nor *vice versa.*

*Rules for construing criminal laws: Principals: Accessories: Intent.* Where a new felony is created by statute, it depends on the terms of the statute whether it reaches accessories; and it is necessary that the accessory have the same intent with the principal. Where a statute in general terms declares a certain act to be a felony, it will involve the consequent liability of accessories before or after the fact, unless it contains something inconsistent with that consequence; and where a statute in terms punishes not only the principal offender, but those who would by the terms of the statute be described precisely as accessories would be at common law, the persons so described will be treated as accessories.

*Rules for construction of criminal statutes: Principals and accessories.* But the statute will nevertheless be construed by its language, and will not be extended beyond it, and where it is so drawn as to be confined in its operation to certain persons, or persons having a certain intent or quality, it must be enforced according to its terms.

*Burning property to defraud insurers: Statute construed: Procuring property to be burned to injure insurers: Distinct offenses: Informations.* The statute in question in this case (*Comp. L. 1871,* § 7560) includes two distinct offenses: one the willful burning of insured property with intent to defraud the insurer; and the other the willful causing or procuring insured property to be burned with intent to injure the insurer, which is intended to include all guilty procurement, whether through guilty principals, or through agents who would not be principal offenders; and all the persons who could under any circumstances be guilty, having been thus definitely specified and divided into two distinct classes, the statute is held to intend that each shall be charged with his own statutory offense in the language or substance of the statute, and not to leave it optional with the prosecutor to charge the defendants according to the facts, or against the facts by legal fiction.

*Burning property to defraud insurers: Information: Defendants not present at the burning: Accessories.* Defendants not present at the burning cannot be convicted under an information charging only the first of the two classes of offenses embraced in said statute.

*Heard October 23.    Decided January 12.*

Error to Saginaw Circuit.

*Gaylord & Hanchett,* for plaintiff in error.

* *Wisner & Draper,* for the People.

CAMPBELL, J.

The respondents below were all tried and convicted of the offense of burning certain insured property, in the city of Saginaw, on the 22d day of June, 1873, with intent to defraud certain insurance companies named in the information. There was no evidence to convict Leizer Meister or William Meister with the burning, as principals present at the fact. The case proceeded throughout on the claim that Rosa Meister, the wife, and Bertha Meister, the sister of William Meister, who occupied the premises, set the property on fire in the absence of the others; and that William and his father Leizer, who lived at some distance off, procured the burning.

At the opening of the trial an objection was made that counsel had been retained by private prosecutors, and at their expense, to aid in conducting the prosecution. Defendants offered to show this fact, and asked to have one of the assisting counsel sworn, who declined to be sworn, and the court refused to require him; and the prosecuting attorney stating the gentlemen referred to were acting at his request, the court permitted them to assist, and overruled the objection. This question has never been presented to the court before. Under the English practice, prosecution by private parties has been the rule rather than the exception, and there is no public prosecutor who has general charge of criminal business. The necessity of such an officer has been urged repeatedly by many of the ablest jurists; and the chief reason suggested has been the abuse of criminal proceedings for private ends, and the subordination of public justice to private control.

---

*Isaac Marston, having been of counsel for the defendants in the court below before his appointment as attorney general, took no part in this case in this court.

In this country we have usually had in every state some officer, or class of officers, appointed for the express purpose of managing criminal business; but the extent and nature of their powers and duties have not been uniform. Sometimes the officers have been permanent, and sometimes counsel have been appointed by the courts to act for the term; and the duties have often been left under vague regulations. Under our territorial statutes, and until the Revised Statutes of 1838, the legislation was not very specific. But by the Revised Statutes of 1838 a regulation was introduced, that was borrowed from the laws of Massachusetts, and that has been preserved ever since. The prosecuting attorney of each county is required to prosecute all criminal cases in the courts of his county, and may be required also to appear for the same purpose before any magistrate, except in certain municipal courts. And he is expressly debarred from receiving any fee or reward from any private person for any services within his official business, and from being retained, except for the public, in any civil action depending on the same state of facts on which a criminal prosecution shall depend.—*C. L.*, §§ *529, 530, 534.*

The courts may appoint counsel to act in his place when he is absent or unable to perform his duties, or where the office is vacant; but no other power of appointment is given. Any recognition of other counsel, if valid, can only be by the request of the prosecuting attorney. He cannot abdicate his duties, and the court cannot divide or relieve them, or give to other counsel any authority whatever, independent of his responsibility.—*U. S. v. Morris, 1 Paine, 209; Hite v. State, 9 Yerg., 198; Com. v. Knapp, 10 Pick., 477; Com. v. Williams, 2 Cush. R., 582.*

The question, therefore, seems to narrow itself to the inquiry whether or not the persons allowed to act at the request or by the assent of the prosecuting attorney are subject to any restrictions applicable to him, or whether they may act without reference to their relations to private parties.

It has been quite common in this state for prosecuting attorneys to be aided by counsel, and probably in some cases they have had the help of those retained by private prosecutors.    As no objections have been taken in these cases, and no attention has been called to the statute, it cannot be said there has been any practical construction of the statute; and we are obliged to consider the case as one requiring the law to be enforced according to its fair meaning.

The mere appointment of public prosecutors is not inconsistent with private prosecutions, either separately or under official supervision.    When the crown officers intervene at common law, they must, as we suppose, have control of the proceedings.    The proposals in England to establish a new system do not aim at entirely destroying the right of private prosecution.—See *Edinburgh Review, No. 220, Art. 2, on Criminal Procedure. in England and Scotland.*    But so long as the present system exists, it appears to make it not only the right, but the duty, of individuals to complain of felonious crimes; and the disability against bringing private actions before prosecuting for felonies was imposed to encourage such complaints, and to ensure private diligence in bringing offenders to justice.    The premiums offered to informers stand on a similar footing.

The policy of allowing *qui tam* actions has not been encouraged in this state, and criminal penalties have been devoted to public purposes.    Neither is the felonious character of an injury held to prevent an action before, any more than after a criminal prosecution.    And one of the reasons given for this is the establishment of public prosecutors.—*Hyatt v. Adams, 16 Mich., 180.*

It is impossible to account for the change in our statutes requiring the exclusive control of criminal procedure to be in the hands of public officers who are forbidden to receive pay or in any way become enlisted in the interests of private parties, unless we assume the law to have. been designed to secure impartiality from all persons con-

nected with criminal trials. The law never has prevented, and does not now prevent, private complaints before magistrates, who have a discretion in regard to calling in the prosecuting attorney. In the ordinary course of things the case for the prosecution is brought out on that examination, and justice requires that it should be, where a defendant does not waive examination. But when the charge is presented on which the respondent is to be tried at the circuit (where he must be tried for all statutory and common-law felonies, except petit larceny), the law requires the public prosecutor to assume and retain exclusive charge of the cause, until the case is ended by acquittal or conviction. The chief dangers which the statute intends to guard against must be those attendant on the trial, inasmuch as the preliminary proceedings usually determine the nature and extent of the accusation, and those may be under the charge of private parties. And we must conclude that the legislature do not consider it proper to allow the course of the prosecuting officer during the trial to be exposed to the influence of the interests or passions of private prosecutors. His position is one involving a puty of impartiality not altogether unlike that of the judge himself. We have had occasion heretofore to refer to this duty in these officers of justice. Their position is a trying one, but the duty nevertheless exists, and the law has done much to remove hindrances to its performance, and in no case more plainly than by the prohibition in question here, and that against allowing a circuit judge to act as counsel in his own court, before another judge, as was done in *Bashford v. People, 24 Mich., 245.* See for illustrations *Wellar v. People, 30 Mich., 16; Wagner v. People, 30 Mich., 384; Hurd v. People, 25 Mich., 416.*

The courts of Massachusetts have passed upon their their statute several times. It was first brought to their attention in the case of *Commonwealth v. Knapp, 10 Pick. R., 477,* where it appeared that Mr. Webster had aided without objection in the trial of the principal felon whose

accessories were on trial, and that reliance had been had on his aid in the case at bar, and that he was acting without any pecuniary inducement. The court, under these circumstances, holding it had a right to allow the prosecuting officer to obtain help in a proper case, considered it admissible in that instance, but reserved their opinion as to any different circumstances, and laid stress upon the absence of any interest in Mr. Webster beyond "a disinterested regard for the public good." In *Commonwealth v. Williams, 2 Cush., 582,* a similar course was sustained, but the court said it could only be allowed for stringent reasons, and referred again to the absence of any pecuniary compensation from any private individual. They said that such counsel is not under ordinary circumstances to be permitted, yet, when sanctioned by the court under the limitations suggested, it would not furnish sufficient ground for setting aside the verdict. In *Commonwealth v. Gibbs, 4 Gray, 146,* a conviction was set aside because the court had, in the absence of the district attorney, appointed counsel to act in his place, who had been retained by private parties in civil litigation of the same matter. In *Commonwealth v. King, 8 Gray, 501,* a gentleman was allowed to act as counsel who had acted in aid of the prosecution on the preliminary examination, and had also sat upon a commission of inquest concerning the fire which was the occasion of the prosecution. The court held this peculiar familiarity with the facts would make his help valuable; and no suggestion was made by any one that he was not disinterested, as no interested person, it must be supposed, would have been allowed to sit on the commission.

The supreme court of Maine in *State v. Bartlett, 55 Maine, 200,* allowed Gen. Shepley to act with the prosecuting attorney, though under retainer from the insurance company at whose instance the case was prosecuted; and disposed of the Massachusetts cases by saying that in the only one where the conviction was set aside, the counsel complained of was in effect acting district attorney, and so

within the words of the statute, which they held should only apply to that officer.

The Massachusetts court, in both of the earlier cases, made the absence of compensation a prominent feature; and in all the cases, spoke of the employment of associates as exceptional, and not generally allowable. They do not bear out the Maine decision in their reasoning. And that can only stand on its own reasoning, upon the assumption that the control of the prosecuting attorney will destroy any influence or mischief which might result from the private interests of his colleagues.

But a theory which holds them as any thing but his deputies, or assistants in office, would render it difficult to reconcile their appearance with the law, which compels him to conduct the prosecution. Such counsel, in the courts of the United States, are required to take the oath of office, and are made expressly public officers.—*16 L. U. S., 165.* The experience of trials shows that any other position is fallacious. When counsel are introduced into a cause, and aid in the trial or argument, it is little short of absurd to suppose they can be prevented from having their own way. It would be unseemly and unprofitable for one counsel, during a trial, to interfere with his associate's questions or argument; and competent auxiliaries would not be engaged on terms which would subject them to open slights. We must look at things as they exist; and every one knows that if a prosecuting attorney allows the counsel of private parties to intervene, it must usually be for the reason that they will save him labor, and assume the burden of the prosecution. The mischief which the law aims to avoid is, prosecution by interested parties; and if such is the policy of the law, it ought to be carried out. It does not assume that there is any thing dishonorable in such employment, but it does assume that it is not proper to entrust the administration of criminal justice to any one who will be tempted to use it for private ends, and it assumes that a retainer from private parties tends to this.

The great scandals which have occurred from the abuse of criminal process to further purposes of gain or vindictiveness, have often demanded notice; and no better remedy has been suggested than the policy of our statute. It does not prevent any one from hunting up proofs, or furnishing every facility to the officers of the law. But it will be very inefficient, if it is possible to allow those who have a direct pecuniary interest in convicting a prisoner, to take an active part in his trial. Until the legislature see fit to restore the common-law rule, and leave cases to private prosecution, it must be assumed that they regard it as unsafe, and opposed to even-handed justice.

As the liability of the insurance companies on their policies would be avoided by proof that the property was burned by the assured, the case is one within the statute; and counsel in the interest of the insurers should not have been allowed to appear.

It appeared, on the trial, that the policies of insurance were not completed for delivery at the home office, but were sent, with printed signatures, to George A. Baker, who signed and delivered them as agent. Upon attempting to prove his agency, it appeared that the authority was written, and was not produced, and no proof was given of its contents. But the court allowed evidence of recognition to stand in lieu of proof of agency, and for that purpose testimony was introduced that the blank policies were received from a Chicago firm purporting to be general agents, but whose authority was not proved; that no losses had been paid by any of the companies at that place; that Baker and his partner made remittances, deducting their commissions, and not showing what was received on particular policies; that reports were sent with lists and particulars of policies monthly. All these were sent to the secretary, who acknowledged them. No evidence was given of the contents of any reports, or of the incorporation or existence of the companies, or that the person corresponding with Baker was secretary. The court held the evidence sufficient to go to the jury.

The statute punishes only the burning of property actually insured; and nothing but a valid insurance plainly established would suffice.    And as the whole validity of these insurances depended on the authority of Baker, it was essential to show it.  There was here no proof of authority from any one, and no proof of recognition by any one who was shown to be connected with and authorized to act for the alleged insurers.    And there was no production of the writings relied on for recognitions, nor proof of their genuineness.    The case was entirely barren of all proof on the most essential part of the issue, and the court should have so ruled.

The fire was on the 22d of June.    Proof was given, under exceptions, that about a month before the fire three conversations were had between Leizer Meister and John Wagner and John Nugent (at one of which William Meister was present), in which Leizer desired to get them to burn the property between the 1st and 10th of June, between Saturday night and Monday morning, when the folks would be away; and consulted as to the best way of burning. This testimony was objected to, as tending to show another offense, under a different statute.

We think this was admissible as tending to show a purpose to burn the property, existing not very long before the fire, and bearing on the probabilities.    The men were convicted on circumstantial testimony, and it was not foreign to the issue to show a previous conspiracy to burn the same property.    If the jury believed this testimony, they must have found that the two Meisters desired to have the building destroyed; and this was certainly one of the elements of the crime, if a crime was committed, and one of great importance.

The bill of exceptions states that some weeks before the fire Wagner and Nugent were arrested for burglary, and continued in jail until after the fire, and were convicted and sent to state's prison, whence they were brought to testify.    It further appeared from their cross-examination that they were of infamous character.

In order to corroborate their testimony, the jailor was allowed to swear, that during the week preceding the fire, Nugent told him that parties owning a clothing store on Water street had spoken to him and Wagner about burning it, and the night it was to be burned would be either Saturday or Sunday evening, when they would be in Bay City. He refused to give names. Also that Wagner told him a similar story, adding that the parties owned a house and barn on the Deerfield road, which they had also spoken to him about burning. This last fact was stricken out as immaterial.

This testimony was all objected to, but received.

This was not the statement which these witnesses had made on the stand. According to that, the time of burning was to have been on or about the eighth of June, and subsequent to their arrest. If they had any conversation about a fire to take place on the 22d, it must have been after their arrest, or they must have given a false account under oath concerning the talk with the Meisters. If Nevins is believed there could be no doubt of the complicity of Wagner and Nugent in the fire; but there can be as little doubt that they made no statement on the stand showing any knowledge in advance of such an event. There is no identity in the stories, and one cannot corroborate the other. The effect of allowing this testimony would be to allow a conviction on the unsworn statements of infamous witnesses, not subjected to any cross-examination upon it. If a witness can be corroborated at all by his repeated statements implicating third persons, the statements must be the same as far as they go. Upon the abstract proposition no decision is called for. This testimony was not admissible.

It is also claimed that the court erred in refusing to charge that there was no evidence on which the two women could be convicted.

In the view we have taken of the proof of insurance, there was no sufficient evidence. But the point specially aimed at was, that, assuming the insurance proved, there was

no proof that the women knew of it, and had an intent to defraud the insurers.

It is admitted that there was competent proof from which the jury were at liberty to find them guilty of the burning.    There was no evidence showing any knowledge of the insurance directly.    But whether knowledge of a ·fact exists is open to proof by circumstances, like any other matter.    If the fact is shown to exist, under circumstances likely to make it known, and persons act as they might be expected to act if they knew it, we are not prepared to hold that inferences of notice may not be drawn.

If, for example, it were shown that property is insured where a family dwell, with store and dwelling united, and it also shown that the property is intentionally burned, it must be assumed it was not burned without some purpose. A jury might properly infer that a wife would not destroy her own or her husband's property unless by his command, or with a design to injure him or some one else.    If no enmity appeared against the husband, a person must be very ignorant who would not suppose it was to conceal some fraud, or to injure some one else.    And if it was likely to injure third persons, it would usually do so by endangering their neighboring property, or by subjecting them to some liability contingent on the fire, which is generally on an insurance.    Juries have a right to judge from the surrounding circumstances whether parties have acted in accordance with one or another of these motives, or whether they have been ignorant tools of others; and if their conduct is such as to clearly indicate one of these motives, so as to·remove all reasonable doubts, the inference is rightly drawn that there was such knowledge as would call out that motive.

We think the facts on this part of the case were properly left to the jury.

But a serious question is presented, whether the men were properly convicted under the information.    They are charged with the burning directly, and not as having pro-

cured the property to be burned; while the evidence was clear that if they were guilty at all, it was by way of procurement, and that what they did was before the fire, both being absent when it happened. Our statutes having made all persons principals who would at common law have been accessories, the question arises whether this is such a case.

The position of these defendants would have been at common law that of accessories before the fact, if this burning were a common-law felony on the part of the women. No one could be a principal without actual presence, near enough to aid, if needed, in furthering the crime. The crime of such an accessory differs in time and may differ in venue, from that of the principal. It is not the same act, but is in the nature of a previous conspiracy to procure its commission.

Where a new felony is created by statute, it depends somewhat on the terms of the statute, whether it reaches accessories or not. It is necessary, in all cases, that the accessory have the same intent with the principal.—*1 Hale, p. 617, 618; Archb. Cr. Pl., 7; Russ. Cr., 35, 36; 1 Bish. C. L., § 666.* And unless by virtue of some statutory provision, no one who is indicted as principal can be convicted as accessory, or *vice versa.* When a statute in general terms declares a certain act to be a felony, it will involve the consequent liability of accessories before or after the fact, where there is nothing inconsistent with that consequence.—*Bishop St. Cr., § 139, 142; 1 Russ. Cr. L., 34.* And when a statute in terms punishes not only the principal offender, but those who would by the terms of the statute be described precisely as accessories would be at common law, the persons so described will be treated as accessories.—*1 Russ., 31-2.*

But a statute will, nevertheless, be construed by its language, and will not be extended beyond it. And it may be so drawn, and often is, as to be confined in its operation to certain persons, or persons having a certain intent

or quality.    And where it does this, it is enforced according to its terms.

The section of the statute under which this prosecution is brought, includes two distinct offenses.    The first is, where any person shall "willfully burn insured property, with intent to defraud the insurer."    The second is, where any one " shall willfully cause or procure the same to be burned, with intent to injure the insurer."—*Comp. L.*, § 7560.

If the second offense were only that of an accessory, the whole section might be regarded as merely reaching the different actors in the same offense, and there could be no great difficulty in determining their position.    But the second clause goes further, and punishes all persons who procure the fraudulent burning of insured property, whether the person doing the burning had or had not the design to defraud insurers, whatever else may have been his guilty purpose.    This clause is equally applicable to all guilty procurement, whether through guilty principals or through agents who would not be principal offenders.    It was evidently designed to prevent the danger of an acquittal of the guiltiest parties, by reason of a failure to convict those who are merely their tools.

Where the statute has so definitely specified all the persons who could, under any circumstances, be guilty, and has divided them into two distinct classes, it seems to be no more than reasonable to deduce an intention to require each to be charged with his own statutory offense, in the language or substance of the statute, and not to leave it optional with the prosecutor to charge the defendants according to the facts, or against the facts by legal fiction. The danger of it appears in the present record, where it became a serious question whether the plaintiffs in error might not be entitled to an acquittal on account of the want of guilty knowledge of their co-defendants, who in turn may have been exposed to prejudice by being joined with them.    If separately informed against according to

the parts they are severally charged with having taken in the transaction, the issues will be more fairly presented, and the results more satisfactory.

The judgment must be reversed, and the verdict set aside, and it must be certified to the court below that there should be a new trial, but that the plaintiffs in error cannot be convicted under the information, unless they were present at the burning.

The other Justices concurred.