PEOPLE v. RABIN.

1. ARSON—EVIDENCE.

In prosecution for arson, evidence of conversations between defendant owner and witnesses who set the fire, in which arrangements for financial consideration for latter's part in the ·crime, coupled with other testimony showing actual physical preparations were made for the fire and actual setting of the fire *held*, sufficient to present question for jury as to guilt of defendant owner (Act No. 328, § 71, Pub. Acts 1931).

2. SAME—STATUTES—DEFINITION OF ''BURN''—PRINCIPAL AND ACCESSORY—INDICTMENT AND INFORMATION.

In view of provision of statute relating to arson that the term ''burn'' included ''counseling, inducing, persuading or procuring another to'' set fire to property, appellant was properly found guilty of arson under information charging that he and codefendant burned building since rule as to accessory and principal governs such information notwithstanding testimony showed that appellant had no part in the actual burning or in the actual physical preparations immediately preceding the burning of his building (Act No. 328, § 71, Pub. Acts 1931).

3. CRIMINAL LAW—ARSON—DISMISSAL OF SOME COUNTS AS TO ONE DEFENDANT—DISCRETION OF COURT.

In prosecution for arson wherein court dismissed two counts dealing with burning of a building with intent to defraud an insurer as to appellant's codefendant for want of proof that such codefendant knew the building and contents were insured, it was not an abuse of discretion on the part of the trial judge in requiring appellant, who knew of the insurance, to remain on trial as to such counts (3 Comp. Laws 1929, § 17298).

4. INDICTMENT AND INFORMATION—ELECTION BETWEEN COUNTS—BUILDING USED PARTLY AS DWELLING AND PARTLY AS STORE.

Refusal of court to require prosecution to elect between count in information charging appellant and another with arson of building used as a dwelling and count charging them with arson of building used as a store was not error where building involved was used in part as a dwelling and in part as a store.

5. Same—Election Between Counts—Finding of Guilt as to
Each Count—Sentence.

Refusal to require prosecution to elect between counts in an
information was not error where verdict of guilty was returned
on each count and identical sentences imposed for each count,
to run concurrently, and each count is based on the same act.

6. Same — Election Between Counts — Arson — Personalty —
Building.

Refusal of court to require prosecution to elect between count in
information charging appellant and another with burning of
insured personalty contained in a building and count as to
burning of an insured building was not error where statute as
to arson authorizes separate charges for burning of insured ·
personalty and insured building (Act No. 328, § 75, Pub. Acts
1931).

7. Criminal Law—Amendment of Information During Charge
to Jury—Prejudice.

Permission of prosecution to amend a count in information charg-
ing appellant and another with arson by the elimination of the
words ''said building not being then and there a dwelling
house or a building within the curtilage of a dwelling house,''
at the close of proofs and during the court's charge to the
jury was not error where such count was still a complete count
without the use of the words and no prejudice to defendant's
rights is shown to have resulted (Act No. 328, § 72, Pub. Acts
1931).

8. Same—Arson—Telegram—Evidence.

In prosecution for arson in which witness who was claimed to
have been employed by appellant to set the fire testified that
appellant had telegraphed him some expense money, the tele-
. gram was admissible without proof of signature of appellant
to the application for the telegram, the weight of such tele-
gram as evidence being for jury.

9. Jury—Arson—Oral Consent to Trial by Less Than 12 Jurors.

Since one accused of crime may orally plead guilty and since it·
is only the waiver of the jury entirely for the trial and consent
to trial by the court that is required to be in writing, no error
was committed in proceeding with 10 jurors upon defend-
ant's oral consent, after 2 jurors had been excused because of
illness.

10. Same—Coercion by Court.

Court was not guilty of coercion and undue haste and pressure
on juror in trial of arson prosecution because after discussion
between court and juror wherein latter who was ill, claimed

she was not able to be present after that day but thought she could proceed and thereafter heard arguments of counsel and court's charge to jury and then participated in deliberation by jury and rendition of verdict.

11. ARSON—INTENT—EVIDENCE—PAYMENT BY INSURER—PROFITS.

In prosecution for arson, intent to defraud insurer was proved by payment of insurer to owner of property burned, since the insurer owed the owner nothing for property intentionally set fire to and fact that he settled for less than the value of the property and therefore did not make a profit being immaterial (Act No. 328, § 75, Pub. Acts 1931).

12. SAME—OWNERSHIP OF BURNED PROPERTY—INSTRUCTIONS—NATURE OF CRIME.

In prosecution for arson, court's charge respecting ownership of the real estate destroyed was not error on ground that building was owned by a third person rather than defendant as charged, where defendant testified as to his loss on the building, since arson is an offense against the habitation and regards the possession rather than the property (Act No. 328, § 75, Pub. Acts 1931).

13. CRIMINAL LAW—USE OF CHARACTER EVIDENCE—INSTRUCTIONS—REQUEST TO CHARGE.

In prosecution for arson, charge as to use of character evidence, which might well have been more complete *held*, not reversible error because entire extent of possible use of such testimony was not explained to the jury, where defendant made no request to charge on the subject.

14. SAME—MODIFICATION OF VERDICT—FINDING OF GUILT ON ALL COUNTS OF INFORMATION.

A modification of jury's verdict in prosecution for arson was not effected by court where inquiry was made of foreman who had stated that defendant was found guilty as charged as to whether the jury had found defendant guilty on all four counts of information and foreman replied that defendant had been found guilty on all four counts and record abundantly sustains verdict.

Appeal from Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted January 16, 1947. (Docket No. 82, Calendar No. 43,273.) Decided April 17, 1947. Rehearing denied May 16,

1947. Certiorari denied by Supreme Court of the United States October 13, 1947.

Samuel H. Rabin was convicted of arson. Affirmed.

*Walter M. Nelson (George Stone, of counsel),* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General; *Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

REID, J. Defendant was convicted on December 13, 1943, under four counts of an information charging him in different forms with the offense of arson. Defendant appeals from sentences imposed on December 20, 1943, under all four counts, the four sentences running concurrently. In all four counts the offense is alleged to have occurred on October 16, 1938, at the city of Detroit. Where we use the word defendant in this case, it refers to appellant Rabin; appellant's codefendant Klein, though convicted, did not appeal.

It appears that defendant and his wife were the owners of a building located at 8532–8534 West Jefferson avenue, the lower part of the building being a store and the upper part being occupied as a dwelling or flat by defendant and his family. There was an entrance from inside the store to the upstairs portion of the building and there was also a separate front entrance from the street to a stairway leading to the upper flat which was defendant's residence.

Count 1 charged defendant Rabin and John Doe, alias Jack Klein, with burning a certain occupied dwelling house. Count 2 (which was withdrawn on motion of the prosecution) charged that defendants

burned a certain building within the curtilage of an occupied dwelling house, to-wit, a store building. Count 3 charged that defendants burned a store building, "said building not being then and there a dwelling house or a building within the curtilage of a dwelling house." Count 4 charged that the defendants burned certain personal property, with intent to injure and defraud the insurers. Count 5 charged that defendants burned a certain building, with intent to injure and defraud the insurer.

The fire took place on October 16, 1938, a Sunday, at about 6:19 p.m., when the Rabin family were absent from the building on an outing. At defendant's trial, one of defendant's immediate neighbors testified that at 6:15 p.m. on that day she was across the street from defendant's building, facing the alley side of the building and that she saw Slew (the man who later admitted that he ignited the fire) come out of the building twice, and that just before he came out the second time she heard an explosion and then saw Slew run out of the building. After the explosion smoke came out of the windows and immediately thereafter there were flames all over the building. Several firemen and policemen testified in considerable detail as to the nature and extent of the fire. The front end of the store and windows were burned out and the rear roof burned out; the fire burned 3 or 4 hours and firemen were there most of the night. A member of the fire department stated that he detected the odor of gasoline in the ruins of the fire.

At defendant's trial Slew testified that he was apprehended the evening of the fire by two policemen, that he and Rubenstein, together with Klein, did set the fire, that he was tried for and found guilty of arson and was sentenced to from 5 to 20 years, of which sentence he served 4 years and 5 months, and that he was released on April 9, 1943.

Slew further testified that during his own trial he had not mentioned defendant Rabin's complicity in the crime, and upon his release he asked Rabin for money, whereupon Rabin caused him to be taken into custody for attempted extortion. Slew later implicated defendant Rabin and at defendant's trial went into considerable detail about negotiations for the making of the fire, from the spring of 1938 to the day before the fire, which negotiations involved Louis Leebove as intermediary, and also Hyman Rubenstein, who helped in making physical preparations for the fire; Slew also testified in detail about payments by Rabin to Leebove for Slew, and payments by Rabin to Rubenstein, and about Rabin's agreements to pay money in consideration for the arson in question.

Leebove and Rubenstein also testified at defendant Rabin's trial that they took part in the arson, and implicated Rabin. Leebove testified that in 1937 he was talking with Rabin and the latter said to him, "Maybe you know somebody who would make a fire for me in this store," and that in August, 1938, Rabin made arrangements whereby Leebove received $200 in an envelope to be given by Leebove to Slew and that Rabin told Leebove that he made arrangements that there would be a fire, and further that the Saturday before the fire Leebove by prearrangement picked up $500 from Rabin and delivered it to Rubenstein. Rubenstein testified in considerable detail about preparations for the fire, for which 175 or 200 pounds of paper were spread on the floor and Rubenstein was to pour the gasoline, and testified about the agreements for money payments in consideration for the commission of the offense involving defendant Rabin.

It will thus be seen that all three of the witnesses, Slew, Leebove and Rubenstein, testified to conversations in which Rabin made arrangements for fi-

nancial consideration for the setting fire to his building. It was for the jury to say whether their testimony, coupled with other testimony showing the actual physical preparations for the fire and actual setting of the fire, established defendant's guilt.

Defendant raises several questions concerning the regularity of his trial and conviction. The first question involved is that the information charged defendants with burning the building, but that the testimony showed that defendant Rabin had no part in the actual burning or in the actual physical preparations immediately preceding the burning. Defendant claims, in other words, that because at best the testimony against him would only show that he hired or procured others to do the burning, he cannot be held guilty of arson. Defendant cites *Meister* v. *People,* 31 Mich. 99, in support of this contention. However, Act No. 328, § 71, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–71, Stat. Ann. § 28.266), enacted since that decision, defines the meaning of the word "burn" as follows:

"The term 'burn' as used in this chapter shall mean setting fire to, or doing any act which results in the starting of a fire, or aiding, counseling, inducing, persuading or procuring another to do such act or acts."

The rule as to accessory and principal therefore governs the information in the instant case.* By reason of the change in the statute, the rule in *Meister* v. *People, supra,* does. not sustain the contention of defendant above stated.

Under his second question defendant Rabin asserts that it was not proper to try him jointly with Klein after counts 4 and 5 were dismissed as to Klein. During the taking of testimony it appeared

---

* See 3 Comp. Laws 1929, § 17253 (Stat. Ann. § 28.979).—REPORTER.

that defendant Klein participated in some of the preparations for the fire with knowledge of the purpose of the perpetrators to commit arson but for want of sufficient proof to show that defendant Klein knew that the contents of the building and the building itself were insured, on motion of the prosecutor the court dismissed counts 4 and 5 as to defendant Klein. The statute, 3 Comp. Laws 1929, § 17298 (Stat. Ann. § 28.1028), permits a joint trial in the discretion of the court. In view of all the circumstances of this case, we consider there was no abuse of discretion on the part of the trial judge in requiring Rabin, who knew of the insurance, to remain on trial as to counts 4 and 5 after the dismissal of those counts as to defendant Klein.

Under his third question involved, defendant claims that prejudicial error resulted from the court's ruling that the prosecution should not be required to elect between counts 1 and 3, and between counts 4 and 5, count 1 alleging the building to be a dwelling house and count 3 alleging it to be a store building. It is to be noted that the offense in both count 1 and count 3 pertained to the same matter, setting fire to the premises, part of which was a dwelling and part of which was a store. Defendant claims that the interior connection from the store to the dwelling, the flat overhead, characterized the whole building as a dwelling.

"Where there are two counts charging different grades of the same offense, under a conviction or plea of guilty, it has been the general practice in England and in this country to pass judgment according to the count charging the highest grade of the offense." *People* v. *Morris,* 80 Mich. 634, 636 (8 L. R. A. 685).

"It would seem that, even assuming there is some merit to defendant's contentions, he was not injured by the alleged error in joinder, inasmuch as a

verdict of guilty was returned on all three counts and identical sentences imposed for each count, to run concurrently." *People* v. *Kolowich*, 262 Mich. 137, 148.

"With regard to the claimed error in sentencing defendant on two counts, based upon the same act, we find no error. Although she was sentenced on each count, the sentences were for the same period of imprisonment and were to run concurrently. It is held that when a defendant is convicted on several indictments tried at the same time and is sentenced on each to run concurrently, the judgment will not be reversed because the evidence was insufficient to support one indictment, since the sentence is, in fact, but a single sentence and is supported by the conviction on the other indictments." *People* v. *Podsiad*, 295 Mich. 541, 545.

There was no error on the part of the court in not requiring the prosecution to elect as between counts 1 and 3. As to the election between counts 4 and 5, defendant was charged in count 4 with setting fire to insured personal property which was contained in the building, with intent to defraud insurers, and count 5 alleged burning an insured building, with intent to defraud the insurer. The statute, Act No. 328, § 75, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–75, Stat. Ann. § 28.270), authorizes a separate charge for burning of insured personal property, and also authorizes a separate charge for burning an insured building. The words of the statute are in the disjunctive. No error was committed by the trial court refusing to require an election between counts 4 and 5.

The fourth question raised by defendant is that after the close of proofs and during the court's charge to the jury, count 3 was amended by eliminating the words, "said building not being then

and there a dwelling house or a building within the curtilage of a dwelling house.'' No error was committed by the court in striking out said words. Count 3 was still a complete count without the use of the words. No prejudice to defendant's rights is shown to have resulted. See Act No. 328, § 72, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-72, Stat. Ann. § 28.267).

Defendant further claims error in the admission in evidence of exhibit No. 35, a telegram. Witness Slew had testified that he met Rubenstein in Cleveland a few days before the fire, that he called up defendant Rabin from Cleveland and talked with him and said he had located a man in Cleveland, that the man had a car and could drive back to Detroit but needed $15 or $20 for expense money. Defendant Rabin told Slew he would send him the money. Slew testified that the next day he received a telegram for $15, which was sent to Rubenstein's address, and that he, Slew, cashed the telegram for $15 and within a day or two, which was about two days before the fire, he and Rubenstein came back to Detroit. During the argument defense counsel claimed that the telegram was stamped October 17, the day after the fire occurred. Slew testified the telegram was sent to him in care of Mr. Rubenstein and delivered at Mr. Rubenstein's address by Western Union messenger. The exhibit was admissible without proof of signature of defendant to the application for the telegram because there was testimony showing the telegram was forwarded and received in compliance with Slew's conversation with defendant by long distance telephone, the amount of money coincided with Slew's demand, and the telegram was payable to Slew, to whom Rabin had agreed to send the money. No request was made by the defendant for a ruling that would

define the manner in which this telegram could be used as evidence. The weight of the telegram as evidence was for the jury.

Defendant claims error because with defendant's consent in open court but not in writing, the attendance of two jurors was excused on account of illness and the case proceeded to a verdict before the remaining 10 jurors, citing *People* v. *Redman,* 250 Mich. 334 and 1 Cooley Constitutional Limitations (8th Ed.), p. 674. See *Attorney General, ex rel. O'Hara,* v. *Montgomery,* 275 Mich. 504, in which case we held that a defendant whose trial began with 12 jurors could validly consent to be tried for a felony by 11 jurors, upon one juror being taken ill, where defendant consented, in open court but not in writing, that the balance of the trial proceed before the remaining 11 jurors. In that case we said, p. 539:

"Under circumstances such as arose in this case, the defendant may be better satisfied to proceed with a jury consisting of 11 jurors already sworn than to take his chances upon the discharge of that jury and the impaneling of another."

It will be noted that a defendant in a criminal case may orally plead guilty and thus waive trial by jury entirely.

In the *Montgomery Case, supra,* after referring to the case of *People* v. *Henderson,* 246 Mich. 481, this Court said, p. 530, referring to a trial on an appeal of a misdemeanor case:

"If defendant in a criminal case in a court of record may orally waive a jury entirely and be tried by the court, I can see no reason why in a court of record he may not waive a trial by jury of 12 and consent to be tried by a jury of 11."

Justice POTTER in the opinion of the Court rendered by him nowhere indicates that the verdict by 11 jurors is upheld because the attack was collateral rather than direct.

No statute of this State requires that the defendant can only in writing waive the full number of 12 jurors and be tried by less than the full number of 12 jurors; it is the waiver of the jury entirely for the trial and consent to trial by the court that is required to be in writing.* No error was committed in proceeding with 10 jurors upon defendant's oral consent.

Defendant further claims error because another juror, Mrs. Hanson, although present on the day when arguments were in progress, was ill, and stated that she was not able to be present after that day. In answer to the court's inquiry whether she thought she could go ahead, she said:

"I'll try.     *     *     *

"*The Court:*     *     *     * You think you will be able to go ahead and listen to the arguments and the court's charge, Mrs. Hanson?

"*Mrs. Hanson:* I think so; I'll try."

Defendant considers there was coercion and undue haste and pressure on the juror, because the arguments, charge to the jury, deliberation of the jury and rendition of the verdict all occurred after the above recited discussion concerning juror Hanson and on the same day. We consider no error was committed by the court in respect to continued attendance of juror Hanson and her participation in the rendition of the verdict.

As before noted, count 4 charged the defendants Rabin and Klein with burning of personal property

---

* See 3 Comp. Laws 1929, § 17131 (Stat. Ann. § 28.856).—RE-PORTER.

with intent to injure and defraud the insurers and count 5 charged the defendants with burning a building with intent to injure and defraud the insurer. Defendant Rabin argues that because the insurer agreed with him as to the loss, and because in each case, as to personal property and as to real estate, the value of the property burned was at least as great as the amount of money agreed on by Rabin and the insurers to be paid by the latter, that an intent to defraud is not proven. Defendant claims, in other words, that since the proofs show that defendant did not profit by the fire, defendant could not be held under either count 4 or 5, and in support of that claim defendant cites *Mai* v. *People,* 224 Ill. 414 (79 N. E. 633); *People* v. *Wakely,* 62 Mich. 297; *Meister* v. *People, supra.*

The stock of merchandise was insured for $20,000. By agreement between Rabin and insurer the loss was adjusted at $12,500. It was testified by George Mehl, an adjuster, that it was agreed between him and Mackey, an adjuster employed by defendant, that the value of the stock of goods in the store was around $13,000. A compromise offer of $12,500 was accepted by defendant Rabin. The insurance on the real estate was $13,500. The insurer paid Rabin $2,500 and the mortgagee $5,156.25, a total of $7,656.25. The household goods were insured for $1,200 and Rabin accepted $1,050 in settlement for that item.

The jury's verdict means that Rabin through the instrumentality of others intentionally caused the fire. Under such circumstances the insurers owed Rabin nothing and in view of the verdict were actually defrauded to the full extent of their payments. Rabin sought to recover the full amount of the insurance but accepted a lesser sum determined as the true value of the loss sustained. Defendant's

theory that plaintiff failed to prove intent to injure and defraud insurers is without merit.

Defendant claims error in the charge of the court respecting ownership of the real estate in the description to the jury of the scope and effect of counts 1 and 3. It was shown in the testimony that the real property involved was one building, the store part of which seems to have been No. 8532 West Jefferson and the flat upstairs, No. 8534 West Jefferson. Count 1 alleges the owner of the dwelling house (at 8534 West Jefferson) as Samuel H. Rabin and count 3 alleges the owners of the store building (at 8532 West Jefferson) as Samuel H. Rabin and Rose Rabin. Testimony was offered to show the owner of the legal title to be Lester E. Deeley. However, defendant testified to his loss on the building and his testimony in that regard could be considered as indicating the title was in himself or himself and his wife and not Deeley.

"Arson is an offense against the habitation, and regards the possession rather than the property. *State* v. *Toole,* 29 Conn. 342, 344 (76 Am. Dec. 602)." *Snyder* v. *People,* 26 Mich. 106, 107 (12 Am. Rep. 302).

See, also, *People* v. *Fairchild,* 48 Mich. 31, 35, where the above citation from the *Snyder Case, supra,* is quoted with approval. The citation is again approved in somewhat different form in *People* v. *Handley,* 93 Mich. 46, 48. No error was committed in the matter objected to above in the charge of the court.

Objection is made by defendant to the portion of the charge dealing with character evidence, particularly that the entire extent of possible use of such testimony was not explained to the jury. Defendant made no request on that subject and while

the charge might well have been more complete, yet we consider no reversible error was committed in that regard.

We have examined the alleged grounds for other objections to the charge and find them without merit.

Defendant claims the court modified the verdict because the record shows the following occurred when the jury returned its verdict:

"*Foreman of the Jury:* We find the defendant, Samuel H. Rabin, guilty as charged.

"*The Court:* Guilty as charged? Let me explain this to you. Mr. Rabin is charged under counts 1, 3, 4 and 5. Do you mean that you find him guilty under all four counts?

"*Foreman of the Jury:* Yes, sir. Find him guilty on all four counts.

"*The Court:* That is, guilty of counts 1, 3, 4 and 5 as charged in the information?

"*Foreman of the the Jury:* Yes, sir.

We consider the court was justified in his inquiry as to the meaning of the foreman's statement, and that the objection with respect thereto is without merit.

The record contains abundant testimony to sustain the verdict.

The judgment is affirmed.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and NORTH, JJ., concurred. DETHMERS, J., did not sit.