PEOPLE v FOSTER

Docket No. 78-2290. Submitted June 2, 1980, at Detroit.—Decided February 3, 1981. Leave to appeal applied for.

Ronnie Foster, along with a codefendant, Detroit Seymore, were charged with first-degree felony murder and burning a dwelling house. Following a jury trial in Recorder's Court of Detroit, Dalton A. Robertson, J., Foster was convicted of manslaughter and burning insured property, while Seymore was convicted of second-degree murder and burning a dwelling house. Foster appeals, arguing that the trial court erred in charging the jury on first-degree murder and burning a dwelling house, in failing to suppress certain evidence obtained by an arson investigator, and in failing to charge the jury as to certain lesser included offenses. *Held:*

1. Since the uncontroverted testimony at trial was that the building which was burned had been stripped of plumbing and radiators, had broken windows and a door and had the utilities disconnected, the building cannot be said to be a dwelling house. While burning a dwelling house is made a more serious offense than the burning of other types of buildings because of the possibility of death to those who reside therein, it is not the fact of death which determines whether the burning is the crime of burning a dwelling house, rather, it is the nature of the use of the property which makes the burning that crime. It is the present use of the property, not its prior use or its location, that determines whether a building is a dwelling house. Since the uncontroverted proofs at trial establish that the building had been abandoned and had been rendered unfit

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arson and Related Offenses §§ 1, 17, 19.
Vagrancy or nonoccupancy of building as affecting its character as "dwelling" as regards arson. 44 ALR2d 1456.
[2] 5 Am Jur 2d, Arson and Related Offenses § 5.
[3, 4] 5 Am Jur 2d, Arson and Related Offenses §§ 5, 7.
[5] 5 Am Jur 2d, Arson and Related Offenses §§ 37, 45, 46.
[6] 68 Am Jur 2d, Searches and Seizures §§ 44, 56.
[7] 5 Am Jur 2d, Arson and Related Offenses § 15.
[8] 5 Am Jur 2d, Arson and Related Offenses §§ 37, 45.

for habitation, the building, at the time of the burning, was not a dwelling house.

2. Since the prosecution failed to establish that the building was a dwelling house, the trial court erred in charging the jury as to first-degree felony murder and burning a dwelling house, a finding that the building was a dwelling house being a necessary element to convict on either of those offenses. Reversal is mandated, even though Foster was convicted of the lesser included offense, since the unwarranted charging of the jury as to the greater offense prejudiced defendant by substantially decreasing his chance for acquittal.

3. While normally evidence obtained during the warrantless entry into a burned building would be considered to be the product of an illegal search and seizure, evidence obtained by an arson investigator during an entry into the burned building to prevent a rekindling blaze is not a product of an illegal search and seizure and is admissible at trial.

4. Preparation to burn property is a cognate lesser included offense of both burning a dwelling house and burning insured property. It was error to refuse to charge the jury as to the offense of preparation to burn property.

5. Malicious destruction of real property is a cognate lesser included offense of both burning a dwelling house and burning insured property where the proofs show that the owner did not authorize the burning. The jury should have been charged with the felony of malicious destruction of real property under a charge instructing it that it must find lack of owner authorization in order to convict on that charge.

Reversed and remanded.

1. ARSON — WORDS AND PHRASES — DWELLING HOUSE — STATUTES.

A structure which has been stripped of plumbing and radiators, has broken windows and a door and has had the utilities disconnected is not a dwelling house within the meaning of the burning of a dwelling house, since such a structure could not, without substantial restorative work, be considered to be fit for habitation (MCL 750.72; MSA 28.267).

2. ARSON — PURPOSE OF STATUTE — STATUTES.

Arson, the burning of a dwelling house, is an offense against the habitation rather than against the safety of the property and is a more serious offense than other crimes involving the burning of property because of the possibility of death to those who reside in the dwelling; it is the nature of the use of the

property rather than the occurrence of a death because of a burning of the property which causes the burning to be the crime of arson (MCL 750.72; MSA 28.267).

3. ARSON — DWELLING HOUSE — TEMPORARY ABSENCE — STATUTES.

The temporary absence from a building by its occupants does not change the status of a dwelling house to some other structure; however, the abandonment of a dwelling house does change the status of such building such that it can no longer be considered to be a dwelling house within the meaning of the burning a dwelling house statute (MCL 750.72; MSA 28.267).

4. ARSON — DWELLING HOUSE — TEMPORARY ABSENCE — STATUTES.

It is the present use of a building as a dwelling house, not any prior use as a dwelling house or the existence of insurance or the location of the building in a residential area, that determines whether a building is a dwelling house for the purpose of the burning a dwelling house statute (MCL 750.72; MSA 28.267).

5. CRIMINAL LAW — JURY INSTRUCTIONS — PREJUDICE — COMPROMISE VERDICT.

Convictions for manslaughter and burning insured property must be reversed where the jury is permitted to consider charges of felony murder and burning a dwelling house even though the prosecution failed to establish that the building that was burned was a dwelling house within the meaning of the arson statute, since the jury's unwarranted consideration of the greater offenses may have prejudiced the defendant by substantially decreasing his chance for acquittal by reason of the possibility of a compromise verdict.

6. SEARCHES AND SEIZURES — BURNED PREMISES — WARRANT — EXIGENT CIRCUMSTANCES.

Evidence obtained by an arson investigator during a warrantless entry into a burned building, while normally being considered to be the product of an illegal search and seizure, is properly admitted at trial for arson where the entry into the building was to prevent a rekindling of the blaze.

7. ARSON — BURNING INSURED PROPERTY — LESSER INCLUDED OFFENSES — PREPARATION TO BURN PROPERTY — STATUTES.

Preparation to burn property is a cognate lesser included offense of both burning a dwelling house and burning insured property (MCL 750.72, 750.75, 750.77; MSA 28.267, 28.270, 28.272).

8. Arson — Burning Insured Property — Lesser Included Offenses — Malicious Destruction of Real Property — Statutes.
  The felony of malicious destruction of real property is a cognate lesser included offense of both burning a dwelling house and burning insured property where the proofs support a finding that the burning of the property was not authorized by the owner of the building (MCL 750.72, 750.75, 750.380; MSA 28.267, 28.270, 28.612).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael F. Bakaian,* Assistant Prosecuting Attorney, for the people.

*Leonard Townsend,* for defendant.

Before: Maher, P.J., and Bronson, and T. C. Quinn,* JJ.

Bronson, J. Defendant, Ronnie Foster, and a codefendant, Detroit Seymore, were charged with first-degree felony murder, MCL 750.316; MSA 28.548, and the burning of a dwelling house or its contents (arson), MCL 750.72; MSA 28.267. Following a jury trial, defendant Foster was convicted of manslaughter, MCL 750.321; MSA 28.553, and the burning of insured property, MCL 750.75; MSA 28.270. His accomplice was convicted of second-degree murder and arson. Defendant Foster was sentenced to terms of imprisonment of 8-1/2 to 15 years and 6 to 10 years on the manslaughter and the burning of insured property convictions respectively. From these convictions, defendant appeals as of right. Codefendant Seymore is not involved in this appeal.

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The basic facts may be briefly summarized. Defendant Foster and Seymore set fire to a vacant house in Detroit. The house had formerly been the residence of Seymore and an Irma Smith. The fire department was summoned to battle the fire, and a rookie firefighter was killed while inside the building, following a re-ignition of the blaze.

Defendant contends that the court committed reversible error by charging the jury on first-degree murder and arson because there was insufficient evidence presented to establish that the burned building was a dwelling house inside the meaning of the arson statute. We reluctantly agree. The uncontradicted testimony of Irma Smith, the owner of the building, indicates that she no longer wanted the house and had unsuccessfully sought to deed the property back to the mortgage company. In apparent anticipation of the burning, the house was stripped. All of the radiators, the hot water heater, and the toilet had been removed. The windows in the building had been broken out, and the back door was kicked in. The utilities had been discontinued. The premises was also infested with rats. Ms. Smith was asked whether she ever intended to return to live in the house. However, she was not allowed to answer, following the trial court's ruling sustaining the prosecutor's objection to this question.[1] Ms. Smith was allowed to testify that she did not intend to lease the building to anybody. It is manifestly evident from the uncontradicted testimony that the house had been abandoned prior to the burning, and was not fit for habitation when the fire

[1] It was error for the trial court to refuse to allow the witness to answer this question. As we will discuss later in this opinion, under Michigan law the intent of the owner of a building is pertinent in determining whether the structure constitutes a "dwelling house" for purposes of the arson statute. The testimony sought to be elicited by defense counsel was both relevant and material. MRE 401, 402.

occurred. In *People v Reed,* 13 Mich App 75, 79; 163 NW2d 704 (1968), this Court said:

"Unless a structure is actually being dwelt in or lived in, it would seem that if it is unoccupied it would have to be a structure that could reasonably be presumed to be a place capable of being dwelt in or lived in to qualify as a dwelling house within the meaning of the statute."

In our opinion, the structure in the instant case could not be reasonably presumed to be fit for habitation. While substantial restorative work could have made the structure habitable, at the time of the fire it was a mere shell of a house and not a dwelling.[2]

The *Reed* Court also noted that arson is an offense against the habitation rather than against the safety of the property. *Id.,* 78. Arson is a more serious offense than other crimes involving the burning of property because of the possibility that those who reside in the dwelling will be killed in the fire. Although death tragically resulted in this case, it was a death that does not call into play the special protection afforded by the prohibition against arson. For the unfortunate firefighter who died in the blaze, the risk of death was not increased by the nature of the structure ignited. An inherent attribute of a firefighter's calling is the possibility of death resulting from the risks of his occupation.

[2] While some poor wayfarer on the urban landscape might have decided that the building in dispute provided shelter and was therefore habitable, this fact cannot be seized upon to justify a conclusion that the building was indeed a "dwelling house". Were we to accept this reasoning in finding the structure a "dwelling house", our expansive construction would eliminate the special character of the arson statute. For those in our society who live a marginal existence on the streets, any abandoned building might be viewed as a habitable shelter.

The prosecution on appeal makes both a legal and factual argument regarding why the structure should be construed as a dwelling house. The prosecution relies on *People v Losinger,* 331 Mich 490; 50 NW2d 137 (1951), in which the Supreme Court held that the temporary absence of a structure's occupants will not convert a dwelling into some other type of building. The more significant aspect of the *Losinger* holding, however, was the Court's determination that a structure intended to be occupied constituted a dwelling house. *Id.,* 502. The occupants of the house destroyed in this case had no further intent to occupy it. In fact, the record shows that they had abandoned the destroyed structure. As such, it was not a dwelling house under *Losinger.*

The prosecution also claims that the following facts were sufficient to support a finding that the building was, indeed, a dwelling house: (1) the structure had been occupied until one week prior to the fire, (2) the building was insured for $11,000 at the time of the blaze, and (3) the house was located in a residential area. The evidentiary insignificance of the first item becomes apparent when one considers analogous situations. For instance, we could not sustain a defendant's conviction for armed robbery where the uncontradicted evidence shows that nothing was taken from the victim on the basis that on the day before the criminal incident said victim had money which could have been the object of a taking. As to the second item, all manner of structures are insured, not just dwelling houses. Furthermore, it is apparent that the purpose of the burning in this case was to perpetrate a fraud on the insurer. Nor does the fact that the building was located in a residential area prove that it was a dwelling house. It is an

unfortunate fact of our time that many once pleasant residential neighborhoods in our urban areas suffer from tragic deterioration. In some of our cities it is not at all uncommon to find people living in homes next door to uninhabitable and ruined former dwelling houses.[3]

Although it seems to us that the verdicts returned by the jury in this case were fair and amply justified on the evidence adduced, we nevertheless are forced to reverse defendant's convictions. Even though defendant was convicted of neither felony murder nor arson, since the evidence justified submission of neither charge to the jury, we must reverse. The Supreme Court put it thusly in *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975):

"[W]here a jury is permitted consideration of a charge unwarranted by the proofs there is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict. For this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged."

See, also, *People v Meier,* 47 Mich App 179, 183; 209 NW2d 311 (1973).

Despite our resolution of the sufficiency question, it is still necessary for us to address two isues which in all likelihood will arise again on retrial.

[3] At trial, the prosecutor conceded that the items in question had been removed. He argued, however, that the acts of the defendants in vandalizing the building prior to the fire could not change the character of the structure. This is not in accord with our view that the arson statute is intended to protect habitation. Where the building is not suitable for occupancy and, in fact, is unoccupied we reiterate that the special protection afforded by the statute is not called into play.

Defendant argues that the trial court erred in denying his motion to suppress evidence obtained by an arson investigator, who acquired this evidence after making a warrantless entry of the structure, following the containment of the fire. Trial testimony established that the investigator entered the premises to prevent a rekindling of the blaze. Defendant relies on *People v Tyler,* 399 Mich 564; 250 NW2d 467 (1977), *aff'd* 436 US 499; 98 S Ct 1942; 56 L Ed 2d 486 (1978), for the proposition that the entry was unconstitutional. The Michigan Supreme Court did hold in *Tyler* that a reasonable expectation of privacy continued to exist in a burned building and that police and fire investigators had to obtain a warrant before entry *unless the search falls into one of the exceptions to the warrant requirement.* Here, the exigent circumstance justifying the warrantless intrusion was the necessity of preventing a re-ignition of the fire. *Tyler, supra,* 578, explicitly recognizes that this is a reasonable justification for a warrantless entry.

Defendant next contends that the trial court erred by refusing to charge on the lesser offenses of preparation to burn, MCL 750.77; MSA 28.272, and malicious destruction of real property, MCL 750.380; MSA 28.612. We have no difficulty in determining that the trial court erred in not instructing on preparation to burn property. The evidence adduced showed that the burning was accomplished by the distribution of inflammable liquid. MCL 750.77; MSA 28.272 specifically proscribes the distribution of such liquid in any structure with an intent to set fire to the same. Under the rule of *People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975), preparation to burn is a lesser cognate offense of both arson and burning

insured property. If requested on retrial, the court must instruct the jury on this offense.

Whether the trial court should have instructed on willful and malicious destruction of real property is a closer question. MCL 750.380; MSA 28.612 requires that the building destroyed belong to another. The structure in this case was owned by Irma Smith. However, in our opinion a person cannot be convicted under this statute if the destruction was authorized by the owner. See, *Adkin v Pillen,* 136 Mich 682, 683; 100 NW 176 (1904). The record would support a finding that Ms. Smith did authorize the burning. However, she was not charged as an accomplice by the prosecution. As such, whether the statute applied to the defendant was a question for the jury.[4]

A second problem with charging willful and malicious destruction of real property is that the statute classifies the offense as a felony or a misdemeanor depending on whether the value of the realty exceeds $100. Under the rule of *People v Chamblis,* 395 Mich 408, 429; 236 NW2d 473 (1975), it would only be permissible to instruct on the felony.[5] Like preparation to burn, we hold that pursuant to *Ora Jones, supra,* willful and malicious destruction of the realty of another is a lesser cognate offense of both arson and burning insured property. Consequently, if requested on retrial, instructions on this offense must be given.

Defendant also claims on appeal that under the

---

[4] On retrial, the jury should be instructed that it must find that the owner of the building did not authorize its destruction for a finding that defendant was guilty of willful and malicious destruction of realty to be an appropriate verdict.

[5] If defendant is able to obtain testimony that the value of the realty was less than $100, pursuant to the modification of *Chamblis* made by *People v Miller,* 406 Mich 244; 277 NW2d 630 (1979), it would be improper for the trial court to refuse to instruct the jury on the misdemeanor if requested by defendant.

rule of *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), and its progeny, the examining magistrate erred in binding him over on a charge of first-degree murder. Our resolution of the question concerning the sufficiency of the evidence to establish arson makes it unnecessary to address this problem.

Reversed and remanded.