447 So.2d 445 (1984)
P.P.M., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2027.
District Court of Appeal of Florida, Second District.
March 23, 1984.
Jerry Hill, Public Defender, Bartow, and Amelia G. Brown, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Acting Chief Judge.
P.P.M., a juvenile, appeals an order of the lower court adjudicating him delinquent. We reverse and remand.
Appellant was charged by petition with first degree arson pursuant to section 806.01(1)(a), Florida Statutes (1981).[1] At trial, *446 testimony revealed that on March 23, 1983, a fire broke out at 1423 Lakeside Drive, a home owned by Mr. and Mrs. Albert Ligertwood. Mrs. Ligertwood testified that the home had been struck by lightning more than four years before, and, although the kitchen had been badly burned by the lightning, the rest of the house remained intact. Since that time, the house had been boarded up. Mrs. Ligertwood's husband and son visited the house quite often and she, herself, visited the house during the previous year to repair a wire fence which enclosed the property. The fence had a gate which was chained and locked. Items of personal property belonging to the Ligertwoods were stored in the house, but the house was uninsured. There was no testimony by Mrs. Ligertwood indicating whether she or her family intended to return and occupy the house.
Mrs. Ligertwood testified that one day while she was repairing the fence a group of children told her that they had been in the house playing. At that time she spoke with appellant, who told her his name was "Bobby." He told her that he was there when the house burned, that he had not done it, and that there was not enough evidence to convict him.
William Martinez, a fire and arson investigator with the State Fire Marshal's Office, testified that after investigating the March 23 fire he concluded that the fire which destroyed the home was not caused by an accident, but by the ignition of a flammable liquid that was poured throughout the house.
Charles Roberts of the Sheriff's Office arrived at the home after the fire was extinguished and talked to two juveniles, R.A. and P.P.M. He talked to them in the presence of P.P.M.'s father, but made no arrest at that time. Deputy Sheriff Bill Myers investigated the March 23 fire and his findings and conclusions corroborated those of Mr. Martinez. Myers interviewed R.A. who told him that he and P.P.M. were alone in the house on the day of the fire and that he did not observe any smoke or flammable liquids. R.A. told Myers that while he and P.P.M. were in the house the fire suddenly started. P.P.M. related basically the same story.
Bert Fox, a retired Fire Marshal living close by, testified that he knew P.P.M. but not R.A., although he had seen them both before. On March 23, R.A. and P.P.M. came to Fox's house to tell him about the fire. Fox reported the fire by phone and told the boys to go back to the house and wait for the deputy sheriff. P.P.M. told Mr. Fox that when one of them stepped on something, twisting his foot, there was a flash and the fire started.
R.A. testified that he and P.P.M. were in the house reading old comic books when the fire broke out, and that he did not know how the fire started. When he looked down at his feet, he saw the fire and jumped. P.P.M. testified that when the fire started both boys were in the house looking through comic books and that he did not smell smoke before R.A. yelled and ran out of the window. P.P.M. testified that he did not have any matches or flammable substances with him.
A nonjury trial resulted in appellant's adjudication of delinquency and he was placed on a program of community control with a suspended commitment. Thereafter, defense counsel filed an amended motion for rehearing alleging that the state failed to establish a prima facie case of first degree arson. The defense, in arguing the motion, stated that the state failed to prove the structure destroyed could rise to the level of a dwelling. In response, the court stated that the character of the Ligertwoods' former home did not change from a dwelling because they chose not to live in it after the first fire. On this basis, the motion was denied.
On appeal, appellant raises two points, only one of which merits discussion. Appellant argues that the state failed to establish a prima facie case of first degree arson because the burned structure was not a dwelling within the meaning of section *447 806.01(1)(a), Florida Statutes. We agree.
Florida case law has not directly defined the term "dwelling" within the meaning of the arson statute. However, in an early position on the sufficiency of an information charging the defendant with burning of a dwelling house under section 5106, Revised General Statutes (1920), the supreme court in Sawyer v. State, 100 Fla. 1603, 132 So. 188, 193 (1931), stated:
[W]hile it is generally held that a dwelling house loses its character as a habitation when it ceases to be dwelt in, or is abandoned as a dwelling and closed up, or is converted into a place for other purposes than human occupancy; ... the temporary absence of its tenants will not take away from a house its character as a habitation or dwelling house, provided the absence is not unreasonably prolonged and there is an intention to return.
Similar types of analyses have been applied by the courts of other jurisdictions in determining whether evidence is sufficient to establish that a burned building is a "dwelling." For example, in People v. Foster, 103 Mich. App. 311, 302 N.W.2d 862 (1981), it was held that the lower court committed reversible error by charging the jury on arson because there was insufficient evidence presented to establish that the burned building was a dwelling house inside the meaning of the arson statute. The Michigan Court of Appeal considered the owner's intent to occupy the house as to whether the structure was a dwelling for purposes of the arson statute. The court concluded that, where the house was abandoned prior to the burning and was unfit for habitation when the fire occurred, it was found not to be a dwelling within the meaning of the statute.
In People v. Reed, 13 Mich. App. 75, 163 N.W.2d 704 (1968), the court, in reversing the defendant's arson conviction, held that the building which was unoccupied for several months, in a dilapidated condition, not habitable without renovation, boarded up to prevent ingress and egress, and was not capable of being lived in at the time of the fire was not a dwelling house within the meaning of the statute.
Similarly, in Fillman v. State, 251 A.2d 557 (Del. 1969), the defendant's arson conviction was set aside. In so doing, the court held that the dilapidated, abandoned four-room building, in a rural area, which had not been used for habitation for more than five years prior to the fire and which had no furnishings nor any operating utilities and was not fit for habitation at the time of the fire, was not a dwelling house within the meaning of the second degree arson statute.
Additionally, Florida case law, in addressing the definition of a "dwelling" within the context of the burglary statutes, supports our conclusion that the building burned in this case was not a dwelling. These cases basically hold that the occupant's temporary absence does not take away from a building being characterized as a dwelling, but it must appear that the occupant left the home with an intention to return and reestablish his residence. Henderson v. State, 80 Fla. 491, 86 So. 439 (Fla. 1920); Smith v. State, 80 Fla. 315, 85 So. 911 (Fla. 1920). In the absence of proof that the occupant intended to return to his home, the evidence must establish that the absence of the occupant is temporary. The evidence in the record from which the court could infer such an intention would include: the length of the absence, furnishings and household effects remaining, frequency of use and condition of the building. See Smith v. State; Johnson v. State, 188 So.2d 61 (Fla. 3d DCA 1966).
Applying these legal principles to the facts of this case, we hold that the trial court erred in concluding that the subject house was a dwelling inside the meaning of section 806.01(1)(a), Florida Statutes (1981). However, because we find that the evidence supports appellant's delinquency adjudication for second degree arson, a lesser included offense of first degree arson, we reverse and remand with instructions that the trial court enter judgment on the lesser *448 included offense [section 806.01(2), Florida Statutes (1981)][2] and to pass sentence accordingly. See Tukes v. State, 346 So.2d 1056 (Fla. 1st DCA 1977); Johnson v. State.
REVERSED and REMANDED.
SCHEB and LEHAN, JJ., concur.
NOTES
[1] Section 806.01(1)(a), Fla. Stat. (1981), provides:

(1) Any person who willfully and unlawfully, by fire or explosion, damages or causes to be damaged:
(a) Any dwelling, whether occupied or not, or its contents;
....
is guilty of arson in the first degree, which constitutes a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Section 806.01(2), Fla. Stat. (1981), provides:

(2) Any person who willfully and unlawfully, by fire or explosion, damages or causes to be damaged any structure, whether the property of himself or another, under any circumstances not referred to in subsection (1), is guilty of arson in the second degree, which constitutes a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.