## State of Vermont v. John A. Williams

[574 A.2d 1264]

No. 87-369

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed March 9, 1990

*Terry Trono*, Washington County State's Attorney, Barre, and *Jo-Ann Gross*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Martin & Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** The defendant appeals from his conviction of first degree arson, 13 V.S.A. § 502. He raises four challenges to the conviction in this appeal. We affirm.

## I.

First, he contends that the trial court erred in failing to grant his motion for judgment of acquittal because the evidence failed to establish that the building burned was a dwelling house within the meaning of the statute.[1]

The defendant argues that the building was vacant, had not been used as a dwelling for over a year and a half, and was incapable of being so used because of lack of heat, electricity or running water, and therefore it was not a dwelling house within the meaning of the statute. We disagree. The information alleged that the building burned was a dwelling house. There was additional evidence that the building burned had been in the same family for approximately seventy years and had been rented out by the owner up to about one and one-half years prior to the fire. At that time, the owner decided to renovate the house for his daughter to live in, and this renovation had begun

---

[1] 13 V.S.A. § 502 provides:

A person who wilfully and maliciously sets fire to or burns or causes to be burned, or who wilfully and maliciously aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging, or adjoining thereto, whether the property of himself or of another, shall be guilty of arson in the first degree, and shall be imprisoned not more than ten years nor less than two years or fined not more than $2,000.00, or both.

about one month before the fire. The building was a landmark that the owner desired to keep, and he visited the house every day during its vacancy.

In support of his position, defendant cites cases from other jurisdictions with similar statutes. In *Fillman v. State*, 251 A.2d 557 (Del. 1969), the defendant was convicted of burning a dilapidated structure which had not been used for habitation for more than five years, with windows broken out, a door left open, without gas, water or electricity, and not fit for habitation. The Delaware court, in setting aside the conviction, observed that if "a structure has lost its character as a 'dwelling house' by reason of abandonment, disrepair, and unfitness for habitation, its status as a 'dwelling house' . . . is not revived by virtue" of the fact that the statute prohibits the burning of vacant and occupied dwelling houses. *Id.* at 558. The case is clearly distinguishable. Far from being abandoned, the house was in the process of renovation for future occupancy as a dwelling with daily visits by the owner. *People v. Foster*, 103 Mich. App. 311, 302 N.W.2d 862 (1981), and *People v. Reed*, 13 Mich. App. 75, 163 N.W.2d 704 (1968), suffer from the same deficiencies as support for defendant's argument. In *Foster*, the owner had abandoned the house which was not fit for habitation, and had no further intention to occupy it. *Foster*, 103 Mich. App. at 315, 302 N.W.2d at 864. In *Reed*, the house was unoccupied, in a dilapidated condition, not habitable without renovation, and boarded up. *Reed*, 13 Mich. App. at 77, 163 N.W.2d at 705.

■ The house here had not lost its character as a dwelling house. It had served as a dwelling until recently, and was in the process of being renovated for continued use as one. Therefore, the structure was entitled to the protection afforded unoccupied or vacant houses by the statute.

## II.

Defendant next argues that, once he raised the issue of competency to stand trial and gave notice of his intent to raise an insanity defense, the court was compelled to conduct a competency hearing.

Following receipt of defendant's notice that he would raise competency issues, the court ordered a psychiatric examination to determine whether the defendant was mentally competent to stand trial. The examination report was subsequently filed with the court. The report found that defendant was quite capable of understanding the nature of the charges against him and able to assist in his defense, and concluded he was competent to stand trial. Thereafter, the parties, in a stipulation signed by the state's attorney, the attorney for the defendant, and the defendant, agreed that the defendant was competent to stand trial and waived any hearing on this issue.

A person shall not be tried for a criminal offense in this jurisdiction if he is incompetent to stand trial. 13 V.S.A. § 4817(a). The question of competency can be raised by the defendant, an attorney, guardian, or other person acting on behalf of the defendant, the State or the court. 13 V.S.A. §§ 4814, 4817. If the issue is raised, the court shall hold a hearing, receive evidence, and make findings regarding the accused's competency to stand trial. 13 V.S.A. § 4817(b). Defendant contends that the stipulation could effect a waiver only if he made it knowingly and intelligently. Therefore, the court could not assess the efficacy of a waiver regarding competency without first establishing that defendant could understand the charge against him and participate intelligently in his defense.

■■ We have earlier held that, under certain conditions, an evidentiary hearing is not required. In *State v. O'Connell*, 149 Vt. 114, 117, 540 A.2d 1030, 1032 (1987), we held that a hearing was not required where:

> (1) the initial doubt as to competency arises with the trial court itself; (2) the order for a psychiatric report is initiated by the trial court based on its own doubt; (3) the report concludes that the defendant is competent to stand trial; (4) the issue of competency is not raised by either party prior to final judgment.

The facts here do not bring the case within the holding of *O'Connell*, because in that case, the court raised the issue of competency sua sponte as permitted under 13 V.S.A. § 4817(b). Here, the issue was raised by defense motion. *O'Connell*, how-

ever, does stand for the proposition that a hearing is not required in every instance where the issue of competency is raised. The trial court had before it a report of a psychiatric examination indicating that the defendant was quite capable of understanding the nature of the charges against him and had the ability to discuss matters with his counsel. The report concluded that he was competent to stand trial. These observations support the conclusion that the waiver was knowing and intelligent. Defendant further argues that a hearing would have afforded the opportunity to rebut the opinions of the examiner. While that may be so, there was no one to rebut those opinions because the need for a hearing had been obviated by a knowing and competent waiver.

## III.

During the precharge conference after the close of the evidence, counsel for the defendant made known his desire for a cautionary instruction with respect to the testimony of an accomplice who had been granted use immunity. A long discussion concerning the wording of this instruction took place, at the conclusion of which the court stated: "So there won't be any misunderstanding, as I understand it, you want it now here 'the state granted Clifford Morway use immunity so that any incriminating evidence he might derive during his testimony could not be used against him in a criminal prosecution?'"

The court then instructed the jury as follows:

> Witness Clifford Morway testified regarding his activities in the house where the fire occurred. Under the circumstances as testified by him, he was under the law an accomplice to any crime committed. As such, he became legally responsible for his acts. When two or more persons combine with a common purpose to do an illegal act, each is criminally responsible as a principal for the acts of the others just as if they had done the act themselves. Here, the State granted Clifford Morway use immunity too—so that any incriminating evidence he may have given during his testimony would not be used against him in a criminal prosecution. As an accomplice, Clifford Morway's testi-

mony should be carefully scrutinized and considered by you in light of his situation and his relation to the crime. However, his testimony is entitled to just such weight and credit as you find it is entitled to receive.

Following the charge, counsel for the defendant told the court that "you should have told them that both an accomplice and somebody who's given testimony under immunity should be carefully scrutinized."

■ This Court has indicated that a charge "would have been more appropriate" had it included some caution concerning the credibility of the testimony of accomplices, especially those granted immunity, but ruled that the failure to do so was not necessarily reversible error. *State v. Crepeault,* 126 Vt. 338, 340, 229 A.2d 245, 247, *cert. denied,* 389 U.S. 915 (1967). In *Crepeault,* as here, the court instructed the jurors generally on credibility of witnesses and told the jury to consider, in assessing the weight to be given to their testimony, that the witnesses had been granted immunity and the witnesses' interest in the outcome. *Id.* at 340, 229 A.2d at 246–47. The Court concluded that the jury was fully aware of the prospect of personal gain to the witnesses and was not unmindful of the circumstances in considering the weight to be given their testimony. *Id.* at 340, 229 A.2d at 247. The same rationale may be applied here. In this case, after informing the jury that the witness had been granted use immunity, the court said that the witness's testimony "should be carefully scrutinized and considered by you *in light of his situation and his relation to the crime.*" (Emphasis supplied.) The underscored words clearly referred to the witness's position as an accomplice who had been granted use immunity. The instructions set forth the "true spirit and doctrine of the law, and there is no fair ground to say the jury has been misled by it." *State v. Norton,* 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986).

## IV.

■■ The defendant's final assault on his conviction arises from the court's refusal to instruct the jury on what he contends was the lesser-included offense of setting fires. 13 V.S.A.

§ 508.[2] The trial court did charge that the jury might convict the defendant of the lesser offense of burning a building or structure, 13 V.S.A. § 503, as opposed to a dwelling house, 13 V.S.A. § 502, but declined to give the § 508 instruction regarding the setting of fires. As noted in *State v. Forbes*, 147 Vt. 612, 617, 523 A.2d 1232, 1235 (1987), an offense is a lesser-included offense of another if it is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense. Thus an offense is a lesser-included offense only if each of its elements is "'always a necessary element'" of the greater offense (quoting *Illinois v. Vitale*, 447 U.S. 410, 419 (1980)). The element of entry upon the land is an element required for conviction under 13 V.S.A. § 508, but not under 13 V.S.A. § 502. While defendant argues that to set a fire without entry is possible only in a fertile mind, it is certainly not beyond possibility. The fact is that the statute relating to the setting of fires requires proof of entry and first degree arson does not. The former has an essential element that is not a necessary element of the latter and is therefore not a lesser-included offense.

*Affirmed.*

---

[2] 13 V.S.A. § 508 provides:

A person who enters upon lands of another and sets a fire that causes damage shall be imprisoned not more than sixty days nor less than thirty days, or fined not more than $100.00 nor less than $10.00, or both. The provisions of this section shall not affect the provisions of sections 507 and 3906 of this title.