## PEOPLE v REEVES

Docket No. 157795. Submitted October 5, 1993, at Detroit. Decided December 7, 1993, at 9:05 A.M. Leave to appeal sought.

 Juma Reeves, Auneray Barber, and Ronald Williams were charged in the Recorder's Court of the City of Detroit with first-degree felony murder for setting afire an uninhabitable building, resulting in the death of a fire fighter trainee. The court, Daphne Means Curtis, J., quashed the first-degree murder charges and reduced the charges to involuntary manslaughter, finding that the burning of an uninhabited and uninhabitable building was not arson within the meaning of the felony-murder provision of the first-degree murder statute. The prosecution appealed by leave granted.

 The Court of Appeals *held:*

 1. Arson, as used in the first-degree murder statute, is common-law arson, which was the burning of a dwelling house. Because the building that the defendants burned was uninhabited and uninhabitable, the burning of the building could not be arson within the meaning of the felony-murder provision. Accordingly, the court's quashing of the first-degree murder charges was appropriate.

 2. Because a finder of fact could find that the defendants intentionally set in motion a force that was likely to cause death or great bodily harm, the finder of fact could find the element of malice necessary to support a conviction of second-degree murder. Accordingly, the court erred in reducing the charges to manslaughter rather than second-degree murder.

 Affirmed in part, reversed in part, and remanded.

1. ARSON — MURDER — FELONY MURDER — DWELLING HOUSE.

 Arson, as used in the felony-murder provision of the first-degree murder statute, is the intentional burning of a dwelling house; the intentional burning of an uninhabited house that is uni-

REFERENCES

Am Jur 2d, Arson and Related Offenses § 5; Homicide §§ 42, 53, 72, 79.

Vacancy or nonoccupancy of building as affecting its character as "dwelling" as regards arson. 44 ALR2d 1456.

nhabitable is not arson within the meaning of the first-degree murder statute (MCL 750.316; MSA 28.548).

2. Homicide — Manslaughter — Malice — Second-Degree Murder.

The element of malice necessary to raise manslaughter to second-degree murder may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Monsey G. Wilson,* for Juma Reeves.

*Joseph M. Xuereb,* for Auneray Barber.

*Brian M. Legghio,* for Ronald Williams.

Before: Taylor, P.J., and Hood and B. A. Jasper,* JJ.

Per Curiam. The people appeal by leave granted from the trial court's reduction of the charges in this case from first-degree felony murder, MCL 750.316; MSA 28.548, to involuntary manslaughter, MCL 750.321; MSA 28.553. We affirm in part and reverse in part.

Defendants intentionally set fire to a vacant building by bringing combustibles into the building, dousing them with an accelerant, and igniting them. The building, whose foundation had been weakened by the removal of bricks, collapsed upon a fire fighter trainee, killing him. There is no

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

evidence that defendants had any role in removing bricks from the foundation.

The main issue in this case is whether intentionally setting fire to an uninhabitable structure constitutes "arson" for purposes of the felony-murder rule. We conclude that it does not.

There is a conflict among panels of this Court concerning this issue. In *People v Foster,* 103 Mich App 311; 302 NW2d 862 (1981), a panel of this Court held that burning an uninhabitable building was not arson. In *People v Clemons,* 184 Mich App 726; 459 NW2d 40 (1990), a different panel came to the opposite conclusion. We choose to follow *Foster* as the better-reasoned approach.

The felony-murder statute defines as first-degree murder a murder that "is committed in the perpetration" of, among other things, "arson." MCL 750.316; MSA 28.548. Neither the felony-murder statute nor the "arson and burning" chapter of the Penal Code define "arson." See *id.*; see also MCL 750.71-750.80; MSA 28.266-28.275. However, at common law, "arson" referred only to the "burning of another's house or dwelling house" and appurtenances. See 5 Am Jur 2d, Arson, § 1, p 801; see also Perkins, Criminal Law (2d ed), p 216.

The prosecutor argues on appeal that, sometime after the common-law crime of "arson" was codified, its definition was expanded to include the burning of other real property. See MCL 750.73; MSA 28.268. In particular, the prosecution notes that from 1927 until 1931 several types of burning were specifically defined as "arson."[1] We note,

---

[1] The burning of a dwelling house and other unlawful burnings were codified by 1838 RS, part 4, tit I, ch 4, §§ 1-8. In 1927, the statute was amended to provide that anyone found guilty of burning a dwelling house, real property, or personal property, "shall be guilty of arson." 1927 PA 38, §§ 2-4. In 1929, this list was enlarged to include insured property and anyone found guilty of such crimes "shall be deemed to have committed the crime of arson." 1929 PA 272, §§ 2-5c.

however, that since 1931 there has been no such definition and that different types of burning are now punished under different statutory sections, albeit consolidated in a chapter entitled "arson *and burning.*"[2]

The prosecutor also points out that numerous court decisions casually refer to all different types of unlawful burning as "arson." See, e.g., *People v Rabin,* 317 Mich 654, 657; 27 NW2d 126 (1947); *People v Simon,* 174 Mich App 649, 654; 436 NW2d 695 (1989); *People v Smock,* 63 Mich App 610, 612-613; 234 NW2d 728 (1975). We acknowledge that "arson" is commonly used to refer to all types of intentionally set fires. However, we note that these cases do not discuss the definition of "arson" and do not address the specific issue what is meant by "arson" in the context of the felony-murder statute. We therefore do not find them dispositive.

In resolving the conflict presented here, the prosecution urges us to follow *Clemons.* In that case, a panel of this Court held that a defendant who had originally been charged with felony murder and with burning real property, but who had pleaded guilty to second-degree murder, had not received an illusory plea bargain. *Clemons, supra* at 727. The Court relied exclusively on the fact that, in 1929, the crime of burning real property was specifically designated as "arson." The *Clemons* Court made no reference at all to *Foster.*[3]

---

In 1931, however, the statute was again amended so that anyone committing these crimes would be "guilty of a felony." 1931 PA 328, ch X, §§ 72-75, 78-80). The term "arson" has not been used in the body of the statute since then.

[2] Contrary to the prosecutor's argument, the title of this chapter can be interpreted to refer to the crime of burning a dwelling house as "arson" but to setting other types of fires as "burning."

[3] Because the *Clemons* panel made no reference to *Foster,* we cannot state that the reasoning of *Foster* was rejected, only that a conflict was created by the inconsistent outcomes.

We decline to follow *Clemons* because, as we noted in footnote 1, the fact that there was a four-year "glitch" in the 150-year history of this statute cannot be held dispositive. Neither before nor after that short period was "arson" specifically defined in the statute, let alone defined to include the burning of real property. Contrary to the prosecutor's argument, we agree with the circuit court that *Foster* is basically indistinguishable from the present case and is better reasoned than *Clemons.*

In *Foster,* the jury was allowed to consider first-degree felony-murder charges based upon the burning of a dwelling house. *Foster, supra* at 314. On appeal, the defendant argued that because the building was unquestionably uninhabitable at the time of the fire, the proper charge was burning insured property, which was not a proper predicate offense for felony murder. *Id.* at 314-315. This Court "reluctantly" agreed that a person could not be convicted of burning a dwelling house unless the same was habitable, and reversed.[4] *Id.* at 315-316; see also *People v Reed,* 13 Mich App 75, 79; 163 NW2d 704 (1968).

The *Foster* Court assumed without discussion that only the burning of a dwelling house could be a predicate offense for felony murder and noted that "[a]rson is a more serious offense than other crimes involving the burning of property because of the possibility that those who reside in the dwelling will be killed in the fire." *Foster, supra* at 316. The Court also noted that, "[a]lthough death tragically resulted in this case, it was a death that does not call into play the special protection afforded by the prohibition against arson." *Id.* The

---

[4] The defendant was convicted of manslaughter, MCL 750.321; MSA 28.553, not felony murder. However, the conviction was reversed because allowing a jury to consider a higher charge unwarranted by the proofs is " 'always' " prejudicial. *Foster, supra* at 318 (citing *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 [1975]).

Court noted further that "[f]or the unfortunate firefighter who died in the blaze, the risk of death was not increased by the nature of the structure ignited" and that "the possibility of death resulting from the risks of his occupation" is "[a]n inherent attribute of a firefighter's calling." *Id.*

We note that here, unlike in *Foster,* the dilapidated nature of the structure did in fact increase the risk of injury to fire fighters. However, we agree with the *Foster* Court that, tragically, death is an ever-present risk of a fire fighter's courageous calling; however, that risk actually may be lower in certain intentionally set fires than in other, accidental fires. That risk, therefore, is not the risk that is addressed by the prohibition against arson. We therefore turn to considering the purpose of the felony-murder statute.

The felony-murder statute elevates to first-degree murder homicides committed during the course of certain felonies. See MCL 750.316; MSA 28.548. Such homicides normally would not be subject to the sentences for first-degree murder because of the absence of a specific intent to kill. See *id.* Obviously, our Legislature must have thought that these underlying felonies were especially reprehensible or involved a particularly high risk of death to the victim and therefore justified special treatment.

A review of the felonies enumerated in the statute shows that they tend to be the most serious in their class. For example, only first- and third-degree criminal sexual conduct is included; only breaking and entering into a dwelling house are included. Similarly, in the context of unlawfully set fires, the burning of a dwelling house is considered the most serious in its class, as evidenced by its penalty (twenty years), which is harsher than one imposed for the burning of real

estate (ten years), the burning of personal property (misdemeanor), and the burning of insured property (ten years). Compare MCL 750.72; MSA 28.267 with MCL 750.73-750.80; MSA 28.268-28.275. Further, only the burning of a dwelling house is considered a crime against habitation, as opposed to a crime against property. See *Foster, supra* at 316.

We conclude, on the basis of all of the above, that the "arson" referred to in the felony-murder statute is only the burning of a dwelling house as was the case under its common-law definition.

Next, the prosecutor argues that the trial court abused its discretion in finding that defendants lacked malice. Thus, according to the prosecutor, the charge against them should at least be second-degree murder, not involuntary manslaughter. We agree.

In reviewing a magistrate's decision to bind over a defendant for trial, the trial court is to determine whether the magistrate committed an abuse of discretion in finding that there was some evidence of malicious intent. *People v Flowers,* 191 Mich App 169, 174, 179; 477 NW2d 473 (1991). Neither the magistrate nor the trial court is to determine whether there is proof of intent beyond a reasonable doubt. *Id.* at 174, 179. Resolving questions of fact, especially those involving intent, is the exclusive province of the trier of fact. *Id.* at 176-179.

Malice is to be determined from all the facts and circumstances of the crime. *Id.* at 176-177. It may be inferred "from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id.* at 177. A fire is undoubtedly such a force.

Reviewing de novo the magistrate's finding of

malice, we find no abuse of discretion. See *id.* at 174. There is sufficient evidence of malice to send the issue to the trier of fact. The charge against defendants, therefore, should be second-degree murder and not involuntary manslaughter.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.