# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LAMONN KNOTT,

       Defendant-Appellant.

UNPUBLISHED
March 10, 2020

No. 341418
Wayne Circuit Court
LC No. 16-007429-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SCOTT ROSEAN ODUM,

       Defendant-Appellant.

No. 341969
Wayne Circuit Court
LC No. 16-007429-02-FC

---

TUKEL, J. (*concurring in part and dissenting in part*).

I join the entirety of the majority opinion, except for the portion of Part II(D) relating to Odum's conviction for second degree arson. The critical issue is whether 9558 Ward, the house where the murder took place and which the defendants then burned, apparently in an attempt to conceal the murder, was reasonably capable of being lived in at the time of the arson, a necessary element of second-degree arson. In my opinion and viewing the evidence in the light most favorable to the prosecution, no reasonable juror could find that the house reasonably was habitable. I would affirm the judgments in all other respects.[1]

---

[1] Because only Odum raised the reasonable habitability issue discussed below, I would not vacate Knott's conviction for second-degree arson. Knott stated in his brief that he challenged the sufficiency of the evidence as to all counts of conviction, but made no argument regarding the arson conviction. Consequently, any challenge as to that count is abandoned. See *In re JS & SM,* 231 Mich. App. 92, 98, 585 N.W.2d 326 (1998); *People v. Kent,* 194 Mich. App. 206, 209–210, 486 N.W.2d 110 (1999) ("It is axiomatic that where a party fails to brief the merits of an

-1-

## I. STANDARD OF REVIEW

Defendant's challenge here is to the sufficiency of the evidence. Under that standard, first adopted by *Jackson v Virginia*, 443 US 307, 316-317; 99 S Ct 2781; 61 L Ed 2d 560 (1979), a reviewing court " 'must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.' " *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559, 564 (2018) (citation omitted).

## II. SECOND-DEGREE ARSON

"[A] person who willfully or maliciously burns, damages, or destroys by fire or explosive a *dwelling*, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents, is guilty of second degree arson." MCL 750.73(1) (emphasis added). Under MCL 750.71(d), a "dwelling" is defined in pertinent part as "any building, structure, vehicle, watercraft, or trailer adapted for human habitation that was actually lived in *or reasonably could have been lived in at the time of the fire* . . . ." (Emphasis added.) At first blush, the definition of "dwelling" might seem to be at odds in part with the parameters of the offense, in that the definition requires that a dwelling be lived in or reasonably capable of being lived in, while the offense itself makes it irrelevant whether the dwelling is "occupied, unoccupied or vacant." But it appears undisputed in this case that the building which was burned was unoccupied.[2] Therefore, the question is whether, despite its unoccupied status, the house "reasonably could have been lived in at the time of the fire." MCL 750.71(d). Because I believe that the answer to this question is that the house reasonably could not have been lived in, the proof as to that element of the offense is insufficient to sustain the jury's verdict.

The term "lived in" is not defined in the statute. To ascertain the ordinary meaning of undefined words in a statute, a court may consult a dictionary. *People v Laidler*, 491 Mich 339, 347; 817 NW2d 517 (2012); *People v Peals*, 476 Mich 636, 641, 720 NW2d 196 (2006). One

---

allegation of error, the issue is deemed abandoned by this Court."). In addition, while Knott asserts that the verdicts against him were contrary to the great weight of the evidence, he puts forth no argument at all about the arson conviction, let alone the specific argument about habitability discussed below. Therefore, that issue also is abandoned.

[2] The prosecution presented a neighborhood resident as a witness, who described the home as having been "abandoned" at the time of the fire, and a police officer, also a prosecution witness, referred to the house as "abandoned." In addition, the prosecution's photographs of the interior of the house bear out this fact. Of course, "abandoned" does not necessarily equate with uninhabitable, but of course many abandoned houses are in fact not reasonably capable of being lived in.

definition of "live" is "to occupy a home." *Merriam-Webster's Collegiate Dictionary* (11th ed). A "home" is defined as "one's place of residence" and "residence" is "the act or fact of dwelling in a place for some time" or "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn." *Id.*

In light of the particular language of Michigan's arson statute, a court reviewing the sufficiency of the evidence must engage in a double reasonableness review: whether a reasonable factfinder could have found that the house reasonably could have been lived in at the time of the fire.

## III. ANALYSIS

For a building to be a place in which one is capable of living, the building must provide at a minimum for the necessities which a person needs regularly, such as heat, light, sanitation and water. See *People v Foster*, 103 Mich App 311, 315-316; 302 NW2d 862 (1981)[3] in which, based on all of the radiators, the hot water heater, and the toilet having been removed; the windows in the building having been broken out; the back door having been kicked in; and the utilities having been discontinued; this Court found that "[i]t is manifestly evident from the uncontradicted testimony that the house had been abandoned prior to the burning, and was not fit habitation when the fire occurred." This Court further noted that "[w]hile substantial restorative work could have made the structure habitable, at the time of the fire it was a mere shell of a house and not a dwelling." *Id*. at 316.

Here too, while it is obvious that one could enter 9558 Ward, as is evident by the fact that the murder took place there, the only pertinent evidence as to the house's habitability prior to the fire were the photographs the prosecution offered and which were admitted at trial. The photographs show a home that is not merely messy, dirty, or unkempt. Instead, the photographs show what can best be described as a de facto dumping site for garbage and other refuse; indeed, the photographs strongly suggest that the house was used as a drug house but was otherwise uninhabitable.[4] The floors, furniture, and counters were piled high with garbage, making it

---

[3] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted). I find *Foster's* construction of the term "habitable" to be persuasive and therefore would adopt it.

[4] In the context of analyzing whether an otherwise abandoned house being used to take shelter could be deemed "habitable," this Court aptly observed in *Foster* that

> While some poor wayfarer on the urban landscape might have decided that the building in dispute provided shelter and was therefore habitable, this fact cannot be seized upon to justify a conclusion that the building was indeed a "dwelling house". Were we to accept this reasoning in finding the structure a "dwelling house", our expansive construction would eliminate the special character of the arson statute. For those in our society who live a marginal existence on the streets, any abandoned

impossible for someone to walk through the house without stepping on or over the refuse. The sheer amount of waste in the kitchen made that room unusable.[5] Therefore, based on the pictures alone, I would hold that there was an insufficient basis on which a jury could find, beyond a reasonable doubt, that the home "reasonably could have been lived in at the time of the fire." Moreover, the fact that 9558 Ward was a residential house in a neighborhood is insufficient to prove that it constituted a "dwelling" within the meaning of the statute. In *Foster*, this Court, while finding that due to its dilapidated state a building was not a "dwelling" noted, "It is an unfortunate fact of our time that many once pleasant residential neighborhoods in our urban areas suffer from tragic deterioration. In some of our cities it is not at all uncommon to find people living in homes next door to uninhabitable and ruined former dwelling houses." *Id*. at 316.

The majority cites a number of cases in support of upholding the arson verdict, but most of them have nothing to do with a sufficiency claim.[6] The majority cites the most general language from those cases, but ignores the actual questions presented and answered. For example, in *People v Miller*, 301 Mich 93, 100 (1942), decided 37 years before the Supreme Court's adoption of the *Jackson v Virginia* constitutional standard which controls this case, the discussion of the sufficiency standard states in full, "The evidence adduced by the prosecution conclusively proved all of the elements necessary to establish the commission of the crime of obtaining money by means of false pretenses, and the trial court properly denied defendant's motion to direct a verdict of not guilty." *Id*. at 98. There is no discussion whatsoever about the standard to be applied in evaluating such a claim. The majority's citation here to *Miller's* statement that "Jurors are the sole judges of the facts and neither the trial court nor this court can interfere with their exercise of that right," *id*. at 100, while true, relates to a discussion regarding a jury instruction, not sufficiency of the evidence and thus has no applicability to this case. Similarly, the citation to *People v Chamblis*, 395 Mich 408, 420; 236 NW2d 473 (1975), also decided before *Jackson v Virginia*, involves the discussion of a jury instruction for a lesser-included offense. As noted by the *Chamblis* Court, the standard for lesser included offenses required a court to view the evidence in the light most favorable to the defendant, *id*. at 419, the exact opposite of the standard applicable to sufficiency claims. Furthermore, in *Sullivan v Louisiana*, 508 US 275, 276; 113 S Ct 2078; 124 L Ed 2d 182

---

building might be viewed as a habitable shelter. [*Foster*, 103 Mich App at 316 n 2.]

*Foster's* construction of what is "habitable" is entirely consistent with the dictionary definitions quoted above. While someone might temporarily take shelter in a structure, that does not make it into a place in which someone lived "for some time," but merely reinforces its character as "a place of temporary sojurn." *Merriam-Webster's Collegiate Dictionary* (11th ed) (to "live") in a place. No doubt for those reasons, the statute requires that a building be in a condition such that it "*reasonably* could have been lived in." MCL 750.71(d) (emphasis added).

[5] Although there was no direct evidence regarding the sanitation of the kitchen, one can only logically assume with the large amount of filth and garbage piled throughout the kitchen that it was not sanitary or otherwise reasonably safe to use.

[6] Surprisingly, although it cites to *Oros*, the majority does not quote *Oros's* recitation of the standard of review, which summarizes precisely the constitutional standard of *Jackson v Virginia*.

(1993), "The question presented is whether a constitutionally deficient reasonable-doubt instruction may be harmless error." *United States v Gaudin*, 515 US 506, 514; 115 S Ct 2310; 132 L Ed 2d 444 (1995) held that a finding of materiality for purposes of a false-statement charge must be made by the jury rather than by the Court. *People v Reed*, 393 Mich 342, 348; 224 NW2d 867 (1975), also decided before *Jackson v Virginia*, involved the propriety of a trial court telling the jury that "I am instructing you both as a matter of fact and as a matter of law in connection with these proceedings, that the killings here are murder in the first degree," as well as other claimed errors, none of which involved sufficiency of the evidence. And finally, *People v Lemmon*, 456 Mich 625, 644; 576 NW2d 129 (1998), involved the standard applicable to a motion for a new trial, and whether the trial court judge may sit as a thirteenth juror regarding issues of witness credibility.[7]

The majority seemingly treats Odum's rights as an either/or proposition—for example, a jury's determination of factual issues either must be essentially unreviewable for any reason, or his right to jury trial has been violated. As a criminal defendant, of course, Odom has a whole host of rights. Thus, while he has the right to jury findings as to all elements of the offense, see, e.g., *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that right is limited by another of the rights enjoyed by a criminal defendant—the right only to be convicted based on sufficient evidence, as determined by the proper standard of *Jackson v Virginia*. Odum was not required to elect one right over another; he has a right to have a jury weigh the evidence and make all factual determinations, but if those factual determinations cannot reasonably support a jury's guilty verdict, then the verdict must be set aside. "The sufficient evidence requirement is a part of every criminal defendant's due process rights," *Wolfe*, 440 Mich at 514, and "has been applied regularly in the courts of this state," *id*, as would be natural for "[a] doctrine establishing so fundamental a substantive constitutional standard." *Id*, citing *Jackson*, 443 US at 316-317.

The majority, citing *Reed*, states "the photographs, no matter how conclusive or compelling to an appellate court, cannot remove the fundamental constitutional right to have the jury render a decision on all essential elements of the offense." But a jury can render a proper guilty verdict only if the evidence reasonably supports each element of the charged offense. That is not the case with the evidence here, because the photographs of the house, viewed in the light most favorable to the prosecution, showed no more than that the house was "a mere shell." *Foster*, 103 Mich App at 316.

---

[7] The majority states "Although the *Lemmon* Court addressed a challenge to the great weight of the evidence and the trial court's grant of a new trial in a criminal sexual conduct case where the verdict was contingent on the assessment of credibility, nonetheless, the principles regarding adherence to the divided functions between the judge and the jury provide instruction for the case at bar." Respectfully, that is simply not correct given the questions presented. The proper standard in the context of a sufficiency claim, as already noted, is that provided by *Jackson v Virginia* and *People v Wolfe*: the reviewing court not only may but must consider the evidence, in the light most favorable to the prosecution, and determine whether any rational fact-finder could find the required elements beyond a reasonable doubt. Because there was insufficient evidence here as to habitability of the burned house, the jury could not reasonably make that finding.

The majority engages in speculation on that point. The majority states that "The photographs merely reflected the end of the story—the condition of the home following the efforts of firefighters to extinguish a fire." But that analysis merely invites the jury to guess that even though the house was uninhabitable after the fire was extinguished, it nevertheless may have been reasonably habitable before firefighters were called. The evidence was essentially undisputed— the house had been abandoned prior to the fire, but was in a neighborhood with inhabited houses, see note 2 to this opinion; and the photographs of the condition of the house after the fire was extinguished. Viewing the evidence most favorably to the prosecution, there simply is no reasonable inference by which firefighters could have been responsible for the piles of refuse shown in the photographs, nor is there a reasonable inference by which firefighters could have been responsible for the furniture being unusable because of the garbage piled upon it. The mere fact that the house may have been occupied from time-to-time as a drug house does not necessarily mean that it was reasonably habitable, which requires that it be suitable for residing in over a period of time; thus, a building can be used for a limited purpose, even the buying, selling, and use of drugs, without being reasonably habitable. I believe that is the most the evidence here shows, viewed in the light most favorable to the prosecution. The issue here is not so much what inferences may fairly be drawn from the evidence; the issue is that there was too little evidence from which inferences could properly be drawn. While the house may have been suitable for the limited purpose of drug transactions and drug use, I do not believe that even crediting all of the prosecution's evidence most favorably to it, there is any reasonable way to conclude that the house was reasonably habitable. The burden was on the prosecution to produce sufficient evidence that the house *was* reasonably habitable, rather than that it might have been; there are enough unknowns

regarding the condition of the house prior to the fire, construing the evidence most favorably to the prosecution, to preclude a finding, beyond a reasonable doubt, that the house was habitable. Consequently, I would reverse Odum's conviction as to second degree arson.[8]

/s/ Jonathan Tukel

---

[8] Nevertheless, I would remand for entry of a judgment of conviction on a lesser-included offense. In cases where the only error is a failure of proof on one element of the offense, it can be permissible to remand for entry of a judgment of conviction on a lesser-included offense. *People v Borders*, 37 Mich App 769, 772; 195 NW2d 331 (1972). However, there are several requirements which must be satisfied.

> Defendant must have been convicted of the offense with which he was charged . . . . The new judgment of conviction must be for an offense which is a lesser included offense of the crime originally charged. The element on which there has been a failure of proof must be an element which raises the greater offense above the lesser. The record must contain credible evidence which would support a conviction of the lesser offense. [*Id.*]

Here, these requirements have been met, permitting entry of judgment as to the lesser-included offense of third-degree arson, MCL 750.74. Under MCL 750.74(1)(a), a person is guilty of third-degree arson if he "[w]illfully or maliciously burns, damages, or destroys by fire . . . any building or structure, or its contents, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire." Thus, the only difference in those two crimes is the dwelling element contained in second-degree arson. See *People v Lewis*, 322 Mich App 22, 30; 910 NW2d 404 (2017) ("In contrast to second-degree arson (requiring that damage be done to a dwelling), third-degree arson requires only that damage be done to buildings or structures."). Because this dwelling element was the only element that was wanting in the prosecution's second-degree arson proofs, and because the "building or structure" element of third-degree arson is easily satisfied, I would vacate Odum's conviction for second-degree arson and remand for the trial court to enter a conviction for the lesser-included offense of third-degree arson and to resentence Odum on this offense. As previously noted, Knott did not raise the issue, and therefore I would not disturb his conviction for second degree arson.