# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STARR LYNN KIOGIMA,

        Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 326159
Eaton Circuit Court
LC No. 14-020114-FC

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant appeals by right her convictions for second-degree murder, MCL 750.317, and operating a motor vehicle under the influence (OUIL) causing death, MCL 257.625(4). The trial court sentenced defendant to 25 to 50 years' imprisonment for the second-degree murder conviction and 10 to 15 years' imprisonment for the OUIL causing death conviction. Because the evidence was sufficient to support defendant's convictions and she was not denied the effective assistance of counsel, we affirm.

This case arises from a fatal crash that occurred on I-96 on the afternoon of September 11, 2013. As defendant attempted to enter the highway, she drove her vehicle across some grass and crashed into a vehicle driven by Raymond Anderson. Anderson's vehicle was pushed across the lanes of traffic into a guardrail. Defendant's vehicle rolled over several times and defendant's four-year old daughter was ejected from the car. Attempts by passersby to resuscitate the child proved unsuccessful. Defendant was intoxicated at the time of the accident, and tests also showed the presence of controlled substances in her blood. The jury convicted defendant as noted above. Defendant now appeals as of right.

## I. SUFFICIENCY OF EVIDENCE

Defendant argues that there was insufficient evidence adduced at trial to convict her of second-degree murder. Specifically, relying on *People v Goecke*, 457 Mich 442; 579 NW2d 868 (1998), defendant emphasizes that drunk driving alone is not sufficient to establish malice and she argues that, in this case, there was no evidence of "misconduct that goes beyond that of drunk driving," such as evidence of reckless driving before the accident or other evidence to indicate that defendant should have been aware that she was too intoxicated to drive. In these

-1-

circumstances, defendant maintains that the prosecution failed to establish beyond a reasonable doubt that she acted with the malice necessary to sustain a second-degree murder conviction.

We review a challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to establish the elements of a crime. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Moreover, questions of witness credibility and the weight of the evidence are issues for the jury; and, we will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* at 9-10 (citation omitted). These are alternative means of proving malice. *People v Johnson*, 187 Mich App 621, 629; 468 NW2d 307 (1991). Consequently, "second-degree murder does not mandate a finding of specific intent to harm or kill." *Goecke*, 457 Mich at 466. Rather, malice may be "inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Reeves*, 202 Mich App 706, 712; 510 NW2d 198 (1993) (citation omitted). As the Court in *Goecke* explained:

> Because depraved heart murder is a general intent crime, the accused need not actually intend the harmful result. One way of expressing this concept is that malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm. [*Goecke*, 457 Mich at 466.]

Whether a defendant acted with malice "is to be determined from all the facts and circumstances of the crime." *Reeves*, 202 Mich App at 712.

In the context of drunk driving in particular, not all drunk driving that leads to death involves malice warranting a second-degree murder conviction. *Goecke*, 457 Mich at 468-469. See also *People v Werner*, 254 Mich App 528, 533; 659 NW2d 688 (2002). In other words, drunk driving alone is not sufficient to establish malice. *Goecke,* 457 Mich at 469. Instead, malice requires "egregious circumstances," and to sustain a second-degree murder conviction there must be "a level of misconduct that goes beyond that of drunk driving." *Id.* at 467, 469. See also *Werner*, 254 Mich App at 533. For example, although there are no set factors for determining whether an intoxicated driver acted with malice, in *Goecke*, the Court found the requisite evidence of malice in three cases that involved misconduct beyond drunk driving around the time of the fatal accident, including evidence of traffic violations, speeding, minor collisions and near collisions, and erratic driving. See *Goecke*, 457 Mich at 470-473.

Likewise, in the present case, we conclude that the prosecutor presented sufficient evidence of misconduct beyond drunk driving to establish malice and sustain defendant's second-degree murder conviction. To begin with, the evidence clearly established that defendant was operating a motor vehicle while intoxicated. Tests on defendant's blood drawn in the emergency room showed that defendant had an ethanol blood alcohol level of 285 milligram per deciliter and later testing, more than two hours after the accident, detected the presence of 0.15 grams of alcohol per 100 millimeters of blood. Two controlled substances—Oxycodone, a schedule 2 narcotic analgesic, and Lorazepam, a schedule 4 drug—were also found in defendant's blood. Evidence established that the potential side effects of Oxycodone include somnolence and dizziness, while Lorazepam can cause sedation, confusion, and lethargy. And, these side effects can be enhanced by mixing the drugs with alcohol. In short, the evidence amply demonstrates that defendant was in no condition to drive and yet she chose to drive after having consumed a significant amount of alcohol, which she coupled with two controlled substances.

In addition to this evidence of inebriation, the evidence shows that defendant did more than operate her vehicle while intoxicated. Defendant greatly exacerbated the risks of drunk driving by also choosing to operate her vehicle on a highway at a high rate of speed, by failing to properly restrain her child, and by disregarding basic rules of the road. In particular, she entered I-96 traveling between 76 to 79 miles per hour. By her own admission, defendant failed to keep her eyes on the road, and instead attempted to merge with her attention focused on the backseat of her car rather than the highway traffic. Defendant then failed to stay in the lines, or even on the road, as she merged. She instead crossed a grassy area before colliding with Anderson's vehicle. Indeed, there was testimony from eyewitnesses that defendant entered the highway at a "right angle" and drove "straight across 90 degrees to [traffic]" toward Anderson's vehicle, meaning that she was travelling perpendicular to the flow of traffic. Notably, defendant undertook these reckless maneuvers without even affording her daughter the protections of an appropriate restraint in the car.[1] Defendant knew the dangers of failing to properly restrain a child as evinced by testimony that, during a previous traffic stop, she had been cited for "unrestrained child" and educated on the need to use a child restraint seat. Yet, despite this knowledge, defendant drove drunk at a high rate of speed with an unrestrained child in her vehicle as she crossed a grassy area and drove into Anderson's vehicle. Taken as a whole, this level of misconduct goes beyond that of mere drunk driving, and a rational jury could conclude that defendant acted in willful and wanton disregard of the likelihood that her actions would

---

[1] On appeal, defendant debates whether the evidence established that the child was not restrained, or not properly restrained, in the vehicle. At trial, the prosecutor and defendant presented somewhat opposing expert testimony on this point. To the extent there were conflicts in the evidence, it was for the jury to assess the credibility of the experts and to decide whether the child was appropriately restrained. See *Dunigan*, 299 Mich App at 582. Consequently, the testimony of defendant's expert does not render the evidence insufficient; rather, we resolve all credibility conflicts in favor of the jury verdict. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004).

result in death. Thus, contrary to defendant's arguments, the evidence was sufficient to establish malice and to support her second-degree murder conviction.

## II. BINDOVER

Defendant also argues on appeal that the evidence presented at the preliminary examination was insufficient to support her bindover to circuit court on a charge of second-degree murder. However, "[i]f a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004). Consequently, because defendant was fairly convicted of second-degree murder at trial, she cannot appeal the sufficiency of the evidence presented at the preliminary examination. See *id.*; *People v Bosca*, 310 Mich App 1, 45; 871 NW2d 307 (2015).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that her trial counsel rendered ineffective assistance. In particular, defendant contends that counsel performed ineffectively by (1) failing to pursue a motion to quash the bindover in the circuit court and (2) failing to renew a request for jury instructions on an accident defense.

Because defendant did not move in the trial court for a new trial or an evidentiary hearing, her claim is unpreserved and this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). To establish ineffective assistance of counsel, the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness and (2) that there is reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). Defense counsel is afforded "broad discretion" in the handling of cases, *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994), and a defendant claiming ineffective assistance must overcome a strong presumption that counsel's performance constituted sound strategy, *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997). "Failing to request a particular jury instruction can be a matter of trial strategy." *Dunigan*, 299 Mich App at 584. "This Court will not substitute its judgment for that of counsel regarding matters of strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

First, defendant argues that her trial counsel's abandonment of the motion to quash filed by her first attorney at the preliminary examination hearing amounted to ineffective assistance of counsel. In particular, defendant's original attorney sought a dismissal of the second-degree murder charge in the district court at the close of the preliminary examination. The district court denied this request, and defendant was bound over for trial. Before the circuit court, a motion to quash was filed, but newly appointed defense counsel then withdrew the motion. Counsel was not ineffective on this basis. In binding defendant over for trial, the district court found sufficient indication of malice in the evidence of defendant's intoxication coupled with her child's unrestrained presence in the car, defendant's inattention to the roadway, and defendant's entry on the expressway over the grass, which caused the accident. The district court did not

abuse its discretion by finding that this evidence was sufficient to support a bindover, meaning that counsel was not ineffective for failing to pursue a futile motion to quash. See *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011). And, in any event, given that there was sufficient evidence introduced at trial to support defendant's convictions, she cannot show prejudice arising from the bindover. See *Wilson*, 469 Mich at 1018. Consequently, defendant's claim is without merit.

Defendant also argues that trial counsel should have renewed a request for a jury instruction on the defense of accident. Specifically, before trial, defendant's attorney requested an instruction on the defense of accident in keeping with M Crim JI 7.1. The prosecutor objected and the trial court refrained from deciding the issue until the close of proofs. On the final day of trial, during a discussion of jury instructions, defense counsel requested an involuntary manslaughter instruction, which the trial court granted. Defense counsel did not make another request for an instruction on the defense of accident, and such an instruction was not read to the jury. Counsel then argued during closing that "[t]his is not murder." Counsel stated that, as a matter of "common sense," it was "unreasonable" to say that defendant was a "murderer" simply because she was driving over 70 mph and made some errors while driving, including looking in the back seat while entering the highway.

On the record before us, it appears that counsel made the strategic decision to propose a lesser finding of involuntary manslaughter rather than arguing that defendant should be found not guilty on the basis of accident as a defense to murder, and we cannot conclude that this was unreasonable on the facts of this case. That is, accident may be a defense to homicide, but a defendant may only be completely excused in the killing of a human being on this basis if "the death is the result of an accident and the actor was not criminally negligent." *People v Morrin*, 31 Mich App 301, 310; 187 NW2d 434 (1971). In other words, accident is not a defense to involuntary murder; rather, the defense of "'accident' is subsumed within the charge of involuntary manslaughter because the jury must consider whether the defendant's conduct was negligent, careless, reckless, wilful and wanton, or grossly negligent." *People v Hess*, 214 Mich App 33, 37-39; 543 NW2d 332 (1995). Given defendant's conduct on the day in question, counsel could have reasonably concluded that a claim of accident was not worth pursuing, but that the jury might be persuaded to return a verdict of involuntary manslaughter, which would be consistent with a claim of accident while acknowledging the criminal negligence involved. See generally *id.* at 37-39 (discussing defense of accident in relation to involuntary manslaughter). Although defense counsel would not be precluded from seeking an accident instruction simply because there was evidence of criminal negligence, *People v Hawthorne*, 474 Mich 174, 178 n 2; 713 NW2d 724 (2006), on the facts of this case, counsel's choice of defense does not evince deficient performance. See *People v Chapo*, 283 Mich App 360, 372; 770 NW2d 68 (2009).

Moreover, even if counsel should have requested an accident instruction, defendant has not shown prejudice. While the accident defense contained in M Crim JI 7.1 was not read to the jury, the jury was thoroughly instructed on the elements of second-degree murder, including the malice requirement and the fact that malice "requires more than mere drunk driving." The instructions on second-degree murder made it clear that an unintentional accident would be inconsistent with a finding that defendant acted with the malice required for murder. Cf. *Hawthorne*, 474 Mich at 185. Further, as noted, the defense of "accident" is subsumed within involuntary manslaughter, *Hess*, 214 Mich App at 39, and the jury was instructed on involuntary

-5-

manslaughter. It follows that, if the jury believed defendant's conduct to be accidental or if the jury had any doubts that defendant acted with malice, it would have convicted defendant of involuntary manslaughter, which does not require malice. Cf. *Hawthorne*, 474 Mich at 185. Instead, the jury found malice and returned a verdict of guilty as to second-degree murder. Given the instructions read to the jury and the jury's second-degree murder verdict, defendant cannot show prejudice arising from counsel's failure to request an accident instruction. Thus, her ineffective assistance of counsel claim is without merit.

Affirmed.


/s/ Michael J. Talbot
/s/ Joel P. Hoekstra